122

Thomas W. CARROLL; Robert J. Carroll; Michael E. McChesney; Emanuel J. Panos; Edward J. Priola; Craig J. Rucker; Robert T. Schmidlin; Beth Turkovic Garfunkel; Christine McClellan; Christopher Sandor and Susanne Ziegler, Plaintiffs–Appellants,

v.

Donald M. BLINKEN, in his capacity as Chairman of the Board of Trustees of the State University of New York; George L. Collins, Jr.; D. Clinton Dominick; Judith Lasher Duken; Arnold B. Gardner; Gurstin D. Goldin; John L.S. Holloman, Jr.; Nan Johnson; Everette Joseph; Judith Davidson Moyers; Edward V. Mele; Victor Marrero; Rosemary Salomone; Edgar A. Sandman; Thomas Van Arsdale; Darwin R. Wales, in their capacities as trustees of the State University of New York; Jerome Komisar, in his capacity as Acting Chancellor of the State University of New York; Vincent O'Leary; Clifford D. Clark; Alice Chandler, in his or her capacity as President and chief administrative officer of, respectively, the State University of New York at Albany, the State University of New York at Binghamton, and the State University of New York at New Paltz and New York Public Interest Research Group, Inc., Defendants–Appellees.

No. 169, Docket 94–7183.

United States Court of Appeals, Second Circuit

Argued Sept. 19, 1994.

Decided Dec. 8, 1994.

Martin S. Kaufman, New York City (Atlantic Legal Foundation, Inc., for plaintiffs-appellants.

Jocelyn Lee Jacobson, New York City (Alexander R. Sussman, Douglas W. Henkin, Fried, Frank, Harris, Shriver & Jacobson, of counsel), for defendant-appellee NYPIRG.

Andrea Green, Deputy Sol. Gen. of State of N.Y. (G. Oliver Koppell, Atty. Gen., of counsel), for State University of New York defendants-appellees.

Before: VAN GRAAFEILAND, MINER, and McLAUGHLIN, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs appeal from a judgment entered on January 31, 1994 in the United States District Court for the Southern District of New York (Owen, J.) after remand. *See Carroll v. Blinken,* 957 F.2d 991 (2d Cir. 1992) (*"Carroll I "*), *cert. denied,* —— U.S. ——, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992). The district court denied appellants' motion under 42 U.S.C. § 1988 for attorney's fees, *see Carroll v. Blinken,* No. 83 Civ. 1272RO, 1993 WL 478406 (S.D.N.Y. Nov. 15, 1993) (*"Carroll II"* ), and entered a judgment requiring NYPIRG to: (1) spend as much money on activities that involve or benefit SUNY Albany students as it receives from their mandatory activity fees; (2) provide annual reports to SUNY Albany certifying its compliance with the preceding requirement; and (3) end the practice of defining membership solely on the basis of payment of a mandatory student fee.

For the reasons that follow, we modify the judgment of the district court by limiting the use of Albany students' fees to those NYPIRG activities and expenses that further the substantial interests of SUNY Albany as identified in *Carroll I.* We also reverse the district court's denial of appellants' request for attorney's fees, and we remand to the district court with instructions to award reasonable attorney's fees to appellants. We affirm the judgment in all other respects.

## BACKGROUND

Plaintiffs-appellants, students at the State University of New York at Albany ("SUNY Albany"), brought this suit against their university and the New York Public Interest Research Group, Inc. ("NYPIRG") seeking to enjoin the allocation to NYPIRG of a portion of the mandatory activity fees paid by the students. Because the factual background of this case is set forth in *Carroll I*, familiarity with which is presumed, we recite only those facts relevant to our disposition of the appeal.

Like all SUNY students, appellants are required by state regulation to pay an activity fee each semester. Students who do not pay the fee are not allowed to register for classes. Student activity fees are pooled and redistributed to a variety of educational, cultural, and recreational organizations including NYPIRG, a statewide, not-for-profit corporation based in New York City with chapters on nineteen SUNY campuses.

In *Carroll I*, we held that appellants' First Amendment rights of free speech and free association were implicated by SUNY Albany's transfer of a portion of the students' mandatory activity fees to NYPIRG, a group that engages in political speech with which appellants disagree. 957 F.2d at 997–99. However, we found that the funding of NYPIRG in this manner served three important interests of SUNY Albany: (a) fostering a "marketplace of ideas" on its campus; (b) providing students with hands-on educational experiences in research, writing, and civics; and (c) promoting student participation in a wide range of extra-curricular activities. *Id.* at 999–1001. To harmonize the competing First Amendment rights of the complaining students and the university, we concluded that SUNY Albany's funding of NYPIRG through mandatory student activity fees was constitutional, provided that "NYPIRG spend[s] as much money on activities at SUNY Albany as it takes in from SUNY Albany students via their activity fees." *Id.* at 1002.

We also struck down the automatic-membership policy of NYPIRG's by-laws, pursuant to which all fee-paying SUNY Albany students were considered NYPIRG members. We held that NYPIRG's policy of conferring membership on "all of its unwitting activity fee contributors" was a clear infringement of appellants' First Amendment rights that did not serve any countervailing university interest of substantial importance. *Id.* at 998, 1003.

The case was remanded to the district court with instructions to "fashion, as unintrusively as possible, procedures requiring NYPIRG to confirm in the Albany Student Association budgetary process that it spends at SUNY Albany the equivalent of Albany students' activity fee contribution." *Id.* at 1003. We also instructed the court to "order NYPIRG to redefine its membership to include only those students who consent to becoming members, and not simply every student who pays an activity fee." *Id.*

On remand, the district court received proposed judgments from each side. Appellants also submitted a motion for attorney's fees on the ground that our decision in *Carroll I* rendered them the prevailing party on the issue of compelled membership and at least partially on the issue of forced funding. The district court denied their request for fees, holding that plaintiffs "cannot be said to have prevailed within the meaning of § 1988: they did not seek what they got; and what they sought they did not get." *Carroll II*, 1993 WL at 478406, at *2. The court found that because NYPIRG was already in compliance with the requirement that it spend as much money at SUNY Albany as it receives in student activity fees, the legal relationship between the parties had not been materially altered by our ruling. Further, the district court found that NYPIRG's automatic membership provision, which we struck down, was neither a significant motivation behind the litigation nor a "central claim" therein. *Id.*

Judgment was entered on January 31, 1994 by the district court. The judgment provided, *inter alia,* that

> NYPIRG may use SUNY–Albany student activity fees only for activities, projects and expenses which involve and/or are for the benefit of SUNY–Albany students. This requirement is satisfied not only by the funding of activities and projects which

occur on, and all expenses incurred at, the SUNY–Albany campus but also by the funding of all activities and expenses which benefit and/or involve SUNY–Albany students. . . .

To ensure that SUNY Albany and its students receive benefits equivalent in amount to the student activity fees distributed to NYPIRG, the judgment required NYPIRG to submit an annual report to SUNY officials detailing the "activities at and expenses incurred in connection with the SUNY–Albany campus in the prior school year." The report is to be similar to reports provided to the district court for the 1989–90 and 1991–92 school years by NYPIRG's comptroller, Gavin Fraser. With respect to the automatic-membership issue, the judgment stated:

> NYPIRG shall not define membership based solely on the payment of a mandatory student activity fee but may define membership to include those who inform NYPIRG in writing they want to become members. . . .

## DISCUSSION

### A. Implementation of This Court's Mandate

■ Appellants contend that the judgment entered by the district court fails to comport with our mandate in *Carroll I* in four distinct ways. We note that, "[u]nder the doctrine of law of the case, a district court generally may not deviate from a mandate issued by an appellate court, and the appellate court retains the right to control the actions of the district court where the mandate has been misconstrued or has not been given full effect." *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir.1992) (citations omitted). Appellate courts therefore retain the authority "to determine whether the terms of the mandate have been 'scrupulously and fully carried out.'" *Id.* (quoting *United States v. E.I. Du Pont De Nemours & Co.*, 366 U.S. 316, 325, 81 S.Ct. 1243, 1249, 6 L.Ed.2d 318 (1961)). Accordingly, we review *de novo* whether the judgment comports with our mandate in *Carroll I*, considering each of appellants' objections in turn.

### 1. Activities That Can Be Funded

■ First, appellants contend that the judgment improperly permits Albany students' activity fees to be used to fund activities that take place away from the SUNY Albany campus. Specifically, appellants argue that by permitting the student activity fees to be used to fund "not only . . . activities and projects which occur on . . . the SUNY Albany campus," but also "all activities and expenses which benefit and/or involve SUNY–Albany students," the district court has upset the balance between the constitutionally permissible funding of activities that have a close nexus with the campus and the impermissible funding of off-campus activities that lack this nexus. Relying on our opinion in *Carroll I*, appellants contend that the interests that justify curtailment of their First Amendment rights vanish when their money is spent off-campus by NYPIRG "in the halls of the state legislature or at the main offices in New York City." *See Carroll I*, 957 F.2d at 1002.

On the other hand, appellees NYPIRG and SUNY Albany argue that our repeated use of the phrases "on campus" and "at SUNY Albany" in *Carroll I* were not intended to impose a geographic limitation on the use of activity fee contributions. Rather, appellees contend that this language was intended to broadly refer to all NYPIRG activities that involve or benefit SUNY Albany students, regardless of where the activities physically take place. In support of this, appellees note that several of NYPIRG's activities that we characterized as occurring at SUNY Albany actually took place off campus. For example, surveys on "local supermarket pricing, local pharmacy compliance with the generic drug laws, and area bank policies on student credit cards," which were conducted by students in the Albany area using NYPIRG funds, were considered to take place at the SUNY Albany campus. *See Carroll I*, 957 F.2d at 994. Appellees distinguish this type of activity from the examples of off-campus activities described in *Carroll I*—the financing of other NYPIRG chapters, statewide administrative expenses, and the salaries of non-student lobbyists, *see id.* at 994, 1002–03—which do

not involve or directly benefit SUNY Albany students.

We agree with the district court and appellees NYPIRG and SUNY Albany that our mandate in *Carroll I* was not intended to impose strict geographic limits on the expenditure of NYPIRG funds. Rather, the decision whether a particular NYPIRG expenditure can be allocated to the Albany students must be informed by the substantial interests of the university and its community that justify the curtailment of the students' First Amendment rights in the first instance. After all, "the infringement of appellants' First Amendment right against compelled speech that occurs when SUNY Albany transfers a portion of the activity fee to NYPIRG" is only permissible because of the university's strong countervailing interests in "the promotion of extracurricular life, the transmission of skills and civic duty, and the stimulation of energetic campus debate." *Carroll I*, 957 F.2d at 1001. When viewed in this light, it is apparent that the phrases "on campus" and "at SUNY Albany" used in our prior opinion are merely a convenient shorthand for referring to expenditures that further the substantial interests of SUNY Albany that were identified in *Carroll I*. *See id.* at 1002 ("[W]e are mindful of our duty to ensure that even incidental burdens on speech be narrowly drawn. Hence we are unwilling to go farther than necessary to fulfill SUNY Albany's substantial interests." (citation and quotation omitted)).

Applying this principle, it is clear that appellants' attempt to draw a line at the campus gate must fail. Such a restriction would be unduly narrow and interfere with the fulfillment of the university's educational objectives. For example, SUNY Albany's strong interest in providing additional educational opportunities for its students through NYPIRG clearly transcends the geographic boundaries of the SUNY Albany campus. Albany students can receive academic credits for interning at NYPIRG's legislative office in Albany, an office located outside the university campus. Similarly,

SUNY Albany students benefited from their involvement in surveying compliance by local businesses with various consumer protection laws. While SUNY Albany's interests in promoting vigorous campus debate and making a wide range of extracurricular activities available to its students will ordinarily be furthered through activities that take place physically on the campus, we do not foreclose the possibility that off-campus activities may, in some instances, further these interests as well. Accordingly, the district court did not err in refusing to impose a strict geographic limitation on NYPIRG's activities and expenditures.

■ On the other hand, we agree with appellants that this portion of the judgment is overbroad in certain respects. The judgment permits NYPIRG to use activity fee monies for any activities that "benefit" or "involve" the Albany students. Some activities, however, may benefit or involve SUNY Albany students without furthering any of the substantial interests that justify the curtailment of the students' First Amendment rights. For example, although NYPIRG's professional lobbying efforts may result in legislation that benefits SUNY students generally, we held in *Carroll I* that this "stretches the nexus between the extracted fee and SUNY Albany's educational interests too far." *Id.* at 1002. Similarly, it is possible to imagine a NYPIRG activity that would "involve" Albany students without furthering any of the substantial interests that justify the mandatory funding.[1] Indeed, even activities that physically occur on campus may not fulfill SUNY Albany's educational objectives and therefore should not be allocated to the Albany campus. In particular, we note that the costs of the NYPIRG statewide conference, which is held on the Albany campus, should only be allocated to the Albany students to the extent that such a conference serves their educational interests. To the extent that the judgment of the district court allowed otherwise, the district court erred.

■ One NYPIRG expenditure of particular concern is the allocation of statewide ad-

---

1. For example, if Albany students were hired to perform administrative duties for NYPIRG, the educational objectives of the university likely would not be served, despite the student involvement.

ministrative expenses to the Albany students. In *Carroll I*, we specifically held that the "administrative expenses that inevitably attend a large statewide organization" do not "fulfill SUNY Albany's substantial interests." *Id.* at 994, 1002. We reasoned that the benefits received by the Albany students "vanish when NYPIRG money is spent ... at the main offices in New York City. SUNY Albany's interests, however substantial, are still, after all, those of the university and its community, not that of an independent statewide organization." *Id.* at 1002. The district court, however, permitted NYPIRG to allocate a portion of its central office administration costs to the SUNY Albany campus. We reaffirm our prior ruling by holding that the district court erred in allocating these expenses to Albany students. Any benefit that Albany students derive from the services of NYPIRG's central administrative staff is far too remote to justify impingement on the Albany students' First Amendment rights.

In accordance with the foregoing, we modify so much of the district court's judgment as provides for unrestricted use of student activity fees for expenditures "which benefit and/or involve SUNY–Albany students" by substituting therefor a provision restricting the use of such fees to the following: (1) activities that foster a "marketplace of ideas" on the SUNY Albany campus; (2) activities that provide SUNY Albany students with hands-on educational experiences; and (3) extra-curricular activities for SUNY Albany students, both on and off the Albany campus, that fulfill SUNY educational objectives.

### 2. Reporting Mechanism

■ In *Carroll I*, we instructed the district court to fashion procedures that would ensure that NYPIRG spends as much at SUNY Albany as it receives from Albany students' fee. 957 F.2d at 1003. Although the precise reporting mechanism was left to the discretion of the district court, we indicated that the reporting procedures should be as unintrusive as possible. *Id.* at 1002–03.

Appellants contend that the reporting mechanism approved by the district court is deficient in two respects. First, they take issue with the NYPIRG accounting system, which is kept on a per-project basis, and suggest that NYPIRG be ordered to switch to a campus-oriented accounting system. This, appellants contend, would avoid the problems inherent in allocating the costs of NYPIRG's projects among a large number of university campuses. Although requiring NYPIRG to design a new accounting system would perhaps simplify the compliance process, at least from appellants' perspective, we specifically considered and rejected requiring any direct tracking of expenses and segregation of NYPIRG's accounts in *Carroll I*, *id.* at 1002. For this reason, the district court correctly refused appellants' invitation to "immerse [itself] to this degree in NYPIRG's inner workings." *See id.*

■ Appellants also take issue with the allocation of various costs described in the documents referred to in the judgment, and suggest a variety of different procedures for NYPIRG to confirm its compliance with this Court's mandate. The district court's judgment requires NYPIRG to submit annual reports describing its projects and activities at SUNY Albany and the expenditures made in connection with each project. The referenced documents show how SUNY Albany's share of the expenditures was determined. The district court found that the form and substance of these reports were adequate to comply with our mandate in *Carroll I*, and appellants have failed to show that the district court abused the broad discretion with which it was vested. Indeed, the reports approved by the district court are similar to, but more extensive than, the reports referred to in *Carroll I*. *See id.* at 1003 n. 9. Although we are cognizant that many of the allocations made in the documents referred to in the judgment were estimates made long after the fact, we expect that as NYPIRG becomes more accustomed to the compliance procedures required by the judgment, its accounting will become more precise.

### 3. Provision for Dissenter's Complaints

■ Appellants contend that the district court erred in refusing to include in the judgment a mechanism for objecting students to challenge NYPIRG's reports. To ensure NYPIRG's compliance with this

Court's mandate, the judgment specifically requires the president of SUNY Albany to review NYPIRG's reports and certify its compliance. As we recognized in *Carroll I,* the university president's determinations are entitled to considerable deference, 957 F.2d at 999, and, regardless of the position taken by the SUNY Albany defendants-appellees in this litigation, we have no reason to doubt that the university's president will faithfully comply with the terms of the final judgment. This case is therefore unlike *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 308, 106 S.Ct. 1066, 1076–77, 89 L.Ed.2d 232 (1986), where the "most conspicuous feature of the [challenged funding] procedure is that from start to finish it is entirely controlled by the union, which is an interested party, since it is the recipient of the agency fees paid by the dissenting employees." The district court therefore did not abuse its discretion by refusing the more intrusive relief requested by appellants.

### 4. Membership Criteria

◼ Appellants contend that the district court erred in failing to limit NYPIRG membership to those students who request it in writing. The district court was instructed on remand to "order NYPIRG to redefine its membership to include only those students who consent to becoming members." *Carroll I,* 957 F.2d at 1003. The judgment expressly states that NYPIRG shall not define membership based solely upon the payment of a mandatory activity fee and it may provide for written notification of a desire to join. No more was required. Appellants' argument that *Carroll I* requires written consent to membership is without foundation.

### B. Attorney's Fees

Appellants also object to the district court's denial of their motion under 42 U.S.C. § 1988 for an award of attorney's fees. Section 1988 provides that in any action or proceeding to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

### 1. Prevailing Party Status

◼ Appellants submit that our decision in *Carroll I* rendered them the prevailing party on the issue of compelled membership and at least partially on the issue of mandatory funding. The district court rejected appellants' argument, holding that the automatic-membership provision was not a significant motivation behind this litigation nor a "central issue" therein, and that NYPIRG was already in compliance with the requirement that it spend as much at SUNY Albany as it receives from Albany students.

◼ In *Farrar v. Hobby,* — U.S. —, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court held that a party has prevailed under section 1988 if it succeeds "on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Id.* at —, 113 S.Ct. at 572 (quotations omitted). "A party need not succeed on every issue raised by him, nor even the most crucial one." *LaRouche v. Kezer,* 20 F.3d 68, 71 (2d Cir.1994). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar,* — U.S. at —, 113 S.Ct. at 573. Although prevailing party status does not depend "on the magnitude of the relief obtained, . . . 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award." *Id.* at —, 113 S.Ct. at 574 (quoting *Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989)).

In *Carroll I,* we held that NYPIRG's policy of holding out all fee-paying SUNY Albany students as members had "irredeemably transgressed the proscription against forced association." 957 F.2d at 1003. While conceding that appellants' success on this issue was "perhaps not merely a nominal victory," the district court refused to accord appellants prevailing party status because (1) the resolution of this issue was not a significant motivation behind the litigation and (2) the injunction requiring NYPIRG to change its membership by-laws "did not change the relationship between the two parties in any

way that practicably benefited the plaintiffs or substantively impaired the defendants." *Carroll II,* 1993 WL 478406, at *2.

We disagree. Membership in an organization is a legal relationship, and as a result of this lawsuit, NYPIRG will no longer be able to hold appellants out as members. Appellants have therefore obtained a judgment that has affected their legal relationship with NYPIRG. Although it is true that appellants sought broader relief in the district court and that the forced-membership claim was not "central," the Supreme Court has specifically rejected the requirement that plaintiffs succeed on the "central issue" or obtain the "primary relief sought" to be eligible for an award of attorney's fees. *See Garland,* 489 U.S. at 790–93, 109 S.Ct. at 1492–94. While appellants may not have succeeded in severing the financial ties between themselves and NYPIRG as they had hoped, they have prevailed insofar as they are not being "further linked against their will or knowledge" with an organization with which they disagree. *Carroll I,* 957 F.2d at 1003; *see Ensley Branch, N.A.A.C.P. v. Seibels,* 31 F.3d 1548, 1582–83 (11th Cir.1994) (plaintiffs that sought to have affirmative-action provisions of consent decree declared unconstitutional have prevailed where appellate court found that provisions were not "narrowly tailored" and ordered district court to restrict scope and duration of provisions). For these reasons, appellants have prevailed within the meaning of section 1988, and have therefore "crossed the threshold to a fee award of some kind." *Garland,* 489 U.S. at 792, 109 S.Ct. at 1493.[2]

■ Appellants also contend that the district court erred in denying them prevailing party status on the mandatory-funding issue. In considering whether appellants prevailed on this issue, the district court reasoned that, because NYPIRG was already in compliance with the rule that it must spend as much at SUNY Albany as it receives from Albany

students' fee, appellants did not succeed in materially altering their legal relationship with the defendants. Appellants argue, however, that, as a result of this litigation, NYPIRG will now have to conform to the fiscal restrictions imposed in *Carroll I,* and SUNY Albany will have to take steps to ensure that NYPIRG complies with these restrictions.

The district court was correct in its decision not to award attorney's fees to appellants on the basis of their challenge to mandatory funding of NYPIRG. Although NYPIRG certainly will have to comply with our ruling in *Carroll I,* there is no evidence in the record to suggest that the district court erred in its finding that NYPIRG has always spent more at the SUNY Albany campus than it received from the university's students. In support of this finding, the district court relied on the affidavit of NYPIRG's comptroller, as well as the lack of contradictory evidence put forth by appellants. It also relied on the fact that only 30% of NYPIRG's overall budget comes from student activity fees at all campuses combined. *See Carroll I,* 957 F.2d at 994. Even subtracting the statewide administrative expenses and the entire cost of the statewide conference, the records submitted by appellants demonstrate that NYPIRG has spent at least several thousand more dollars at SUNY Albany than it has received from Albany students' fees in past years. Thus, because this Court's ruling on the funding issue in *Carroll I* did not materially alter the relationship between the parties, appellants cannot be considered prevailing parties on this issue. *See Hewitt v. Helms,* 482 U.S. 755, 763, 107 S.Ct. 2672, 2677, 96 L.Ed.2d 654 (1987) (securing favorable statement of law in the course of litigation is insufficient to support prevailing-party status); *cf. Garland,* 489 U.S. at 792, 109 S.Ct. at 1493 (judgment declaring regulation unconstitutional would not sustain prevailing party status if regulation had never been enforced).

---

**2.** Contrary to NYPIRG's assertion, our order in *Carroll I* requiring each side to bear its own costs on appeal cannot be taken as "strong support" for denying attorney's fees to appellants. Pursuant to Fed.R.App.P. 39(a), "if a judgment is affirmed or reversed in part, or is vacated, the costs shall be allowed only as ordered by the court." *Cf.* Fed.R.Civ.P. 54(d)(1) (costs in the

district court "shall be allowed . . . to the prevailing party unless the court otherwise directs"). Our discretionary decision in *Carroll I* to have each side bear its own costs, based in large part on the difficult and challenging nature of the issues brought before us, is therefore no substitute for the reasoned analysis required by *Farrar v. Hobby.*

## 2. NYPIRG's Liability for Attorney's Fees

Having concluded that appellants have prevailed against NYPIRG on the forced-membership issue, it is necessary to decide whether NYPIRG is liable for attorney's fees under 42 U.S.C. § 1988. A private party, such as NYPIRG, can be liable for attorney's fees under section 1988 only if it is subject to jurisdiction under 42 U.S.C. § 1983. *Annunziato v. The Gan, Inc.* 744 F.2d 244, 250 (2d Cir.1984). Conduct by a private entity, such as NYPIRG, is considered state action when "[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity," *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961), or when "there is a sufficiently close nexus between the State and the challenged action" that the private party's action "may be fairly treated as that of the State itself," *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *accord Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1081 (2d Cir.1990), *cert. denied,* 499 U.S. 960, 111 S.Ct. 1583, 113 L.Ed.2d 648 (1991); *Annunziato,* 744 F.2d at 250–52 (private party must have been a "joint actor" with state or involved in a "mutual understanding" or "concerted action" with state actors).

Appellants contend that NYPIRG's entitlement to an allocation from the mandatory student activity fee, and thus its ability to claim that all students were NYPIRG members because they were all "fee paying" students, resulted from its exercise of a privilege having its source in state authority. We agree. Here, the undisputed facts demonstrate that the state institution, SUNY Albany, and the private defendant, NYPIRG, were joint participants in the unlawful conduct. NYPIRG's by-laws provided that any student who pays the student activity fees is "a 'member' of the organization." 957 F.2d at 995. This "overt[ ] and inaccurate[ ] claim[ ] to represent the interests of the SUNY Albany student body," *id.* at 1003, was made possible by state regulations, enforced by SUNY Albany, that make payment of the entire fee a condition of registration, attendance, matriculation and graduation at SUNY Albany. *See* N.Y.Educ.Law § 355; 8 N.Y.C.R.R. § 302.14. Pursuant to these regulations, the President of SUNY Albany must approve the allocation and use of the student activity fees. Furthermore, the SUNY Albany administration had been provided with NYPIRG's by-laws, so it cannot claim to have been unaware of NYPIRG's policy of forced association. Taking these factors into consideration, it is clear that the co-defendants were joint participants in the unlawful conduct.

## CONCLUSION

In accordance with the foregoing, we modify so much of the district court's judgment as deals with the expenditure of student activity fees, reverse so much of the judgment as denies attorney's fees, remand for the assessment of reasonable attorney's fees, and affirm in all other respects.