Paul **COLEMAN,** Plaintiff,

v.

**TOWN OF HEMPSTEAD, Town of Hempstead Dept. of Sanitation, Richard Ronan, personally, Edward Burns, personally, Patrick J. DiPierri, personally, Gregory Lollo, M.D., personally, National Association of Drug–Free Employees, University Services and LabCorp Laboratories, Defendants.**

No. CV 96–5352(ADS).

United States District Court, E.D. New York.

Jan. 4, 1999.

Michael E. Duffy, Mineola, NY (Michael E. Duffy, Eric Prusan, of counsel), for Plaintiff Paul Coleman.

Hempstead Town Attorney's Office, Hempstead, NY (Deputy Town Attorneys Susan B. Jacobs and Mary E. Mahon, of counsel), for Defendants Town of Hempstead, Town of Hempstead Dept. of Sanitation, Richard Ronan, Edward Burns, Patrick J. DiPierri, and Gregory Lollo, M.D.

Ahmuty, Demers & McManus, Albertson, NY (Brendan T. Fitzpatrick, of counsel), for Defendant University Services.

Aaronson, Rappaport, Feinstein & Deutsch, New York City (Robert Cecala, Faye Caldwell, Nicholas J. Marotta, of counsel), for Defendant LabCorp Laboratories ("Laboratory Corporation of America").

Neville, Shaver, Hubbard & McLean, Stamford, CT (Seeley Hubbard, of counsel), for Defendant National Association of Drug–Free Employees ("NADE").

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action arises out of the plaintiff's 24–day suspension from employment at the Town of Hempstead Department of Sanitation as a result of having failed a random drug test, which he alleges was bungled. The plaintiff raises procedural and substantive due process claims under 42 U.S.C. § 1983, as well as state law claims for negligence and malpractice, against the Town, certain Town officials, the Department of

Sanitation, the Town's Medical Review Officers, and the laboratory hired by the Town to interpret the urinalysis test. At issue are the Rule 12(b)(6) motions to dismiss the Amended Complaint (the "Complaint") by one of the Medical Review Officers and the laboratory on the ground that a Section 1983 claim cannot be maintained against them because the they are private entities which did not act under color of state law. In addition, the laboratory argues that it cannot be held liable under a negligence theory, since it owed no duty to the plaintiff.

## I. BACKGROUND

The alleged relevant facts of this case, as set forth in the Complaint, are as follows.

In October 1995, the plaintiff, Paul Coleman ("Coleman" or the "plaintiff") was employed by the Town of Hempstead ("Town") as a Sanitation Man II with the Department of Sanitation. The defendant Richard Ronan is the Commissioner of the Sanitation Department.

On October 27, 1995, the Town initiated a random drug-testing policy for employees of the Department of Sanitation. The defendant National Association of Drug Free Employees ("NADE"), trained personnel at the Town and the Sanitation Department with regard to workplace drug-testing, helped write the Town's drug-testing policy, and contracts with and administers the Town's drug-testing program. Dr. Gregory Lollo, M.D., is a physician who originally served as the Medical Review Officer ("MRO") for the Town's drug-testing program. Although not explained in the Complaint, an MRO is a "licensed physician responsible for receiving laboratory results generated by an employer's drug testing program who has knowledge of substance abuse disorders and has appropriate medical training to interpret and evaluate an individual's confirmed positive test result together with his or her medical history." 49 C.F.R. 40.3.

On the second or third day of random drug-testing, either October 26, 1995 or October 27, 1995, the plaintiff was directed to provide a urine sample for analysis. The sample was split into two, separately labeled vials which the plaintiff initialed.

On the evening of October 31, 1995, the plaintiff received a telephone call at his home from an unidentified individual stating that he had tested positive for drugs. Using caller-I.D., the plaintiff returned the call, told the unknown person that there had to have been a mistake, and asked that a second test be performed. Allegedly, the unknown caller informed Coleman that a second such test already had been done.

The next day, November 1, 1995, the plaintiff was summoned to his supervisor's office. In the presence of co-workers, other supervisors and union officials, the defendant Patrick J. DiPierri, an employee of the Department of Sanitation, told Coleman that he had failed the drug test and was being suspended for five days without pay. It is unclear from the Complaint what position DiPierri holds at the Department. Allegedly, DiPierri made this announcement at the direction of Edward Burns, another employee at the Department of Sanitation whose exact title and position are also unclear. DiPierri instructed the plaintiff to sign a disciplinary form acknowledging the suspension without pay.

Thereafter, the union representatives advised the plaintiff to immediately enter a drug rehabilitation counseling program in order to keep his job. The plaintiff contacted a certified social worker, Bonnie Weintraub, and arranged to begin counseling sessions. During the ensuing several months, the plaintiff attended the counseling sessions, which he eventually had to pay for himself when his medical coverage for the sessions ended.

On November 2, 1995, the plaintiff went to the SmithKline Beecham Laboratory to have a drug test performed, but was told that he needed to return with a doctor's prescription for the test. The following day, on November 3, 1995, the plaintiff's doctor issued such a prescription. On November 6, 1995, one week after his first drug test, the plaintiff took a second drug test at SmithKline. On November 9, 1995, he was informed that the result of that test was negative.

On November 10, 1995, the plaintiff and his counselor telephoned Scot Spiritis, a Town employee who manages the drug-test-

ing program, to request the positive test results. Although Spiritis told them that a doctor would contact them, that did not happen.

On November 20, 1995, Spiritis directed plaintiff to have another drug test performed and indicated that if it was negative, he could return to work. Four days later, on November 24, 1995, the plaintiff went to Roche CompuChem Laboratories for another drug test, which was negative. He returned to work on November 27, 1995.

After numerous inquiries by the plaintiff and his attorney, in or about March 1996, a deputy town attorney informed them that the original split urine sample had been located and was available for testing. The deputy town attorney directed plaintiff's counsel to contact Spiritis and NADE to discuss the protocol for having the sample tested. Spiritis and NADE, in turn, advised counsel to have the plaintiff select a laboratory from the list of federally approved drug testing laboratories and to send a check for $ 125.00 to the defendant University Services, the new Town MRO. University Services is an organization, located in Pennsylvania, which the Town contracted with as its new MRO for its drug-testing program. In compliance with these instructions, the plaintiff sent a check to University Services requesting that the split sample be forwarded to SmithKline for confirmatory sample testing.

However, in or about May 1996, University Services informed plaintiff's counsel that the wrong specimen had been sent to it, and that the correct one would be sent and tested on an expedited basis. Despite repeated requests, however, the plaintiff was never given the results of the sample's retesting.

The plaintiff filed the original complaint which initiated this action on October 31, 1996.

Several months later, on or about January 25, 1997, the plaintiff's attorney received a letter from University Services stating that the plaintiff's October 27, 1995 positive urine test had been invalidated because, according to the defendant LabCorp Laboratories ("LabCorp"), the seal of the specimen had been broken. According to the Complaint,

LabCorp is an organization located in North Carolina which the Town and/or University Services and/or NADE hired to conduct drug testing for the Town.

On February 18, 1997, the plaintiff filed the Amended Complaint at issue, raising the following causes of action:

### First Cause of Action
### (§ 1983/Procedural
### Due Process)

"By suspending plaintiff for twenty-four (24) days without pay and without a hearing or the ability to contest his positive drug test, [all of the] defendants... violated plaintiff's right to procedural due process of law under the fourteenth amendment ... and further violated 42 U.S.C. § 1983."

### Second Cause of Action
### (§ 1983/Substantive
### Due Process)

"By suspending plaintiff for twenty-four (24) days without pay and denying him the opportunity for a hearing or other opportunity to challenge the drug test result, [all of the] defendants ... violated plaintiff's right to property under the substantive component of the due process clause of the fourteenth amendment ... and further violated 42 U.S.C. § 1983."

### Third Cause of Action (Defamation)

"By publishing the results of plaintiff's drug test to other employees, supervisors and union representatives, defendants Edward Burns and Patrick DiPierri defamed plaintiff in the workplace and in the community."

### Fourth (§ 1983/Procedural Due Process) and Fifth (Malpractice) Causes of Action

"By failing to provide plaintiff with his split urine sample for retesting immediately following the positive result, defendant Gregory Lollo, M.D., MRO, substantially departed from minimally accepted professional judgment, practice and standards, thereby depriving plaintiff of due process of law under the fourteenth amendment

... and hence, violated 42 U.S.C. § 1983. Such action further amounted to medical malpractice."

### Sixth (§ 1983/Procedural Due Process) and Seventh (Malpractice) Causes of Action

"By failing to provide plaintiff with his split urine sample for retesting and/or losing the sample, defendant University Services, MRO, substantially departed from minimally accepted professional judgment, practice and standards, thereby depriving plaintiff of due process of law under the fourteenth amendment ... and 42 U.S.C. § 1983. This action further amounted to medical malpractice."

### Eighth (§ 1983/Procedural Due Process) and Ninth (Negligence) Causes of Action

"By failing to safeguard plaintiff's split urine sample in the chain of custody, and failing to provide the split sample for retesting, defendant LabCorp Laboratories deprived plaintiff of due process of law under the fourteenth amendment ... and 42 U.S.C. § 1983. Such action further amounted to negligence."

### Tenth (§ 1983/Procedural Due Process) and Eleventh (Negligence) Causes of Action

"By failing to provide plaintiff with his split urine sample for retesting, defendants Town of Hempstead, Town of Hempstead Department of Sanitation, Gregory Lollo, M.D. and University Services deprived plaintiff of due process of law under the fourteenth amendment ... and 42 U.S.C. § 1983. Such action further amounted to negligence."

### Twelfth Cause of Action (Reimbursement)

"Because of the actions of the defendants, plaintiff was forced to pay unreimbursed medical and other expenses, for which he should not be liable."

The Rule 12(b)(6) motions to dismiss the complaint followed. University Services moves to dismiss only those portions of the complaint which are based upon Section 1983, namely, the 1st (§ 1983/Procedural Due Process), 2nd (§ 1983/Substantive Due Process), 6th (§ 1983/Procedural Due Process) and 10th (§ 1983/Procedural Due Process) Causes of Action. LabCorp moves to dismiss all of the claims against it, namely, the 1st (§ 1983/Procedural Due Process), 2nd (§ 1983/Substantive Due Process), 8th (§ 1983/Procedural Due Process) and 9th (Negligence) causes of action.

## II. DISCUSSION

### A. 12(b)(6) Motion to Dismiss for Failure to State a Claim

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle him to relief. *S.E.C. v. U.S. Environmental, Inc.,* 155 F.3d 107, 110 (2d Cir.1998); *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41 (2d Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 [1957]). It is not the Court's function to weigh the evidence that might be presented at a trial; instead, the Court must merely determine whether the complaint is legally sufficient. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Thus, the Court must accept the allegations of the complaint as true, and construe all reasonable inferences in favor of the plaintiff. *Connell v. Signoracci,* 153 F.3d 74 (2d Cir. 1998); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f). The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Dar-*

*ien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (quoting *Weisman v. LeLandais,* 532 F.2d 308, 311 [2d Cir.1976] [per curiam] ).

### B.  The Defendants' Motions to Dismiss the § 1983 Claims

As noted previously, University Services and LabCorp move to dismiss the Section 1983 claims. University Services and LabCorp primarily contend that the plaintiff has not adequately alleged that they were acting under color of state law when they allegedly violated the plaintiff's civil rights. University Services also argues that it cannot be held liable under a conspiracy theory, since no allegations are set forth in that regard. However, because the plaintiff's opposition to the motion expressly states that he is not pursuing and does not allege a conspiracy theory of liability under Section 1983, the Court does not address University Services' latter argument. Instead, the Court considers only whether the plaintiff has sufficiently pleaded allegations that University Services and LabCorp acted "under color of state law."

With respect to LabCorp, the Court notes that the plaintiff apparently has not responded to the defendant's arguments as they relate to the Section 1983 causes of action. In fact, the plaintiff's papers in opposition to LabCorp's motion to dismiss state that he seeks damages against LabCorp due to its "negligent failure to safeguard the plaintiff's split urine sample in the chain of custody and failing to provide the split sample for retesting," without mentioning the § 1983 claims. However, during oral argument, plaintiff's counsel stated that he wishes to pursue the § 1983 claims against LabCorp. In any event, the Second Circuit has instructed that where the pleadings are themselves sufficient to withstand dismissal, the plaintiff's failure to respond to a motion for judgment on the pleadings cannot constitute a "default" justifying dismissal of the complaint. *See Mag-*

*gette v. Dalsheim,* 709 F.2d 800 (2d Cir.1983). Accordingly, the Court must resolve LabCorp's motion to dismiss on the merits.

An action under Section 1983 cannot be maintained "unless the challenged conduct was attributable at least in part to a person acting under color of state law." *Chan v. City of New York,* 1 F.3d 96, 107 (2d Cir.), *cert. denied,* 510 U.S. 978, 114 S.Ct. 472, 126 L.Ed.2d 423 (1993) (citing *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 [1982]; *Dwares v. City of New York,* 985 F.2d 94, 98 [2d Cir.1993] ). Thus, the plaintiff must plead and eventually prove that the relationship with the Town defendants "was sufficient to permit an inference that [LabCorp and University Services] acted not as ... independent organization[s], but [as] arm[s] of the state." *Chan v. City of New York,* 1 F.3d at 106. In other words, to be subject to suit under § 1983, the alleged infringement of federal rights must be "fairly attributable to the State." *Rendell–Baker v. Kohn,* 457 U.S. at 838, 102 S.Ct. 2764.

Conduct by private entities, such as University Services and LabCorp, is considered state action under two theories. First, state action may be attributed to a private party when the "[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity," *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). This standard, known as the "symbiotic relationship" test, does not require that the plaintiff demonstrate that the state was involved in the challenged conduct. *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.,* 483 U.S. 522, n. 29, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (the plaintiff must show that the federal government "can or does exert any influence over the exercise of the [defendant's challenged] enforcement decisions"); *Myron v. Consolidated Rail Corp.,* 752 F.2d 50, 54 (2d Cir.1985).

Second, state action is attributable to a private entity when "there is a sufficiently close nexus between the State and the challenged action" so that the private party's

action "may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Carroll v. Blinken,* 42 F.3d 122, 131 (2d Cir.1994); *Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1081 (2d Cir.1990), *cert. denied,* 499 U.S. 960, 111 S.Ct. 1583, 113 L.Ed.2d 648 (1991). This is known as the "close nexus test." In contrast to the symbiotic relationship test, which focuses on the state's overall relationship with the private actor, the close nexus test specifically examines the state's link to the challenged action. *See Jackson,* 419 U.S. at 351, 95 S.Ct. 449; *Hadges v. Yonkers Racing Corp.,* 918 F.2d at 1081. The close nexus test is not satisfied merely by the fact that the private entity is a business "affected with the public interest," (*Jackson v. Metropolitan Edison Co.,* 419 U.S. at 353, 95 S.Ct. 449); or that the state "approv[ed] of or acquiesce[d] in the initiatives" of the private entity, (*San Francisco Arts & Athletics,* 483 U.S. at 547, 107 S.Ct. 2971; *Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777 [1982]); or that a business is subject to extensive regulation (*Jackson v. Metropolitan Edison Co.,* 419 U.S. at 350, 95 S.Ct. 449), or was publicly subsidized, (*San Francisco Arts & Athletics,* 483 U.S. at 544, 107 S.Ct. 2971), or had been given monopoly status by the state, (*Jackson v. Metropolitan Edison Co.,* 419 U.S. at 351–52, 95 S.Ct. 449). *See Chan v. City of New York,* 1 F.3d at 106 (discussing cases). In addition, "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Chan, supra,* at 106 (quoting *Rendell–Baker v. Kohn,* 457 U.S. at 841, 102 S.Ct. 2764). "The purpose of [the close-nexus] requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Id.* (quoting *Blum v. Yaretsky,* 457 U.S. at 1004, 102 S.Ct. 2777).

"Such responsibility may be found when, after the facts are sifted and weighed, there is evidence that a state or its political subdivision 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [state or political subdivision].' " *Id.* (quoting *San Francisco Arts & Athletics,* 483 U.S. at 546, 107 S.Ct. 2971 and *Blum v. Yaretsky,* 457 U.S. at 1004, 102 S.Ct. 2777).

■ Applying the generous standard of review required on a motion to dismiss, and the criteria set forth above, the Court finds that the facts alleged in the Complaint permit the inference that LabCorp and University Services were acting under color of state law, under either the close-nexus or symbiotic relationship tests.

The present Complaint meets the close-nexus test because the facts alleged suffice to permit a finding that LabCorp performed testing and held custody of the plaintiff's urine sample at the direction of the Town, that such actions were in furtherance of enforcement of the Town's drug testing regime, that the actions of LabCorp in so doing were the responsibility of the Town, and that LabCorp's conduct was therefore state action. In the Court's opinion, although sufficiently pleaded against LabCorp at this juncture, the allegations are somewhat stronger with respect to University Services, which allegedly serves as the new Town MRO, thereby supervising the Town's drug-testing program. *See Chan,* 1 F.3d at 106 (contractor was state actor under close nexus test for purposes of § 1983 action).

■ Alternatively, the plaintiff alleges that the state actor, the Town, and the private defendants, LabCorp and University Services, were joint participants in the purportedly impermissible conduct, thereby satisfying—at least at this early stage of litigation—the "symbiotic relationship" test. The Complaint alleges that LabCorp failed to safeguard plaintiff's split urine sample in the chain of custody, and that both defendants failed to provide the split sample for retesting. Their alleged possession and control of the urine sample, and their failure to make it available to the plaintiff, was made possible by Town regulations, enforced by the Town, that makes urine testing a condition of employment with the Town. Taking these factors into consideration, the Complaint sufficiently pleads that these defendants were

joint participants in the alleged unconstitutional conduct. *See Carroll v. Blinken,* 42 F.3d 122.

In so finding, the Court notes that when all the facts are fleshed out at the conclusion of discovery, the moving defendants may be able to demonstrate on a summary judgment motion that there are no genuine issues of material, triable fact with regard to whether they acted under color of state law. However, looking only to the facts as alleged in the Complaint, and accepting all the facts as true, as this Court must on a motion to dismiss the complaint under Rule 12(b)(6), the plaintiff's allegations pass pleading muster.

Accordingly, the motions of the defendant LabCorp and University Services to dismiss the Complaint to the extent it alleges claims arising under § 1983 are denied.

### C. LabCorp's Motion to Dismiss the Negligence Causes of Action

In addition to attacking the § 1983 claims, LabCorp moves to dismiss the negligence cause of action, on the ground that LabCorp did not owe Coleman any duty of care. In support of this theory, LabCorp raises three contentions: (1) that an independent testing facility performing workplace testing owes no duty to the employee; (2) that LabCorp had no relationship with Coleman upon which to predicate a duty; and (3) that LabCorp adhered to the Federal Procedures for Transportation Workplace Drug Testing, codified at 49 C.F.R. 40 ("Federal Procedures"), and promulgated pursuant to the Omnibus Transportation Testing Act of 1991 (codified as amended in scattered sections of 45 & 49 U.S.C.).

With respect to the third argument—namely, that LabCorp adhered to the Federal Procedures—the Court notes a significant difference between the arguments raised in LabCorp's original motion to dismiss, as opposed to its reply papers. In its original motion papers, LabCorp argues that since it adhered to the Federal Procedures, it was per se not liable. However, its argument takes on a distinctly different twist in the reply papers. For the first time in the reply papers, LabCorp argues that the plaintiff's claims are entirely preempted by certain provisions of the Federal Procedures. For example, the Federal Procedures generally requires laboratories to retain a split specimen for 60 days after acquisition, and only requires additional retention beyond the 60-day period where the employee has requested a test. *See* 49 C.F.R. § 40.29(b)(2). However, this Court declines to consider the preemption arguments raised for the first time, in explicit terms, in reply papers, thereby denying the plaintiff a full opportunity to respond.

█ The Court turns its attention to the remaining arguments in support of the motion to dismiss. LabCorp contends that Coleman's negligence theory fails as a matter of law because it owed him no duty. To prevail on a negligence claim, Coleman must demonstrate that LabCorp owed him a duty, which was breached, and that such breach caused him damages. *Palka v. Servicemaster Management Services Corp.,* 83 N.Y.2d 579, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994).

In support of its argument, LabCorp relies primarily on *Hall v. United Parcel Service,* 76 N.Y.2d 27, 556 N.Y.S.2d 21, 555 N.E.2d 273 (1990), where the New York Court of Appeals refused to recognize a cause of action for the negligent administration of a polygraph test by a detective agency. In *Hall,* the plaintiff was an employee of UPS, which hired a detective bureau to investigate a theft. The plaintiff and other UPS employees consented to undergo a polygraph examination. The plaintiff failed the test and was forced to resign. The plaintiff filed a lawsuit alleging that the detective bureau had negligently administered the polygraph test.

The Court of Appeals concluded that the detective bureau owed no duty to the plaintiff. In reaching this conclusion, the Court of Appeals did not emphasize the lack of a contractual relationship between the plaintiff and defendants, but rather "the nature of the harm for which plaintiff seeks a remedy." 76 N.Y.2d at 32, 556 N.Y.S.2d at 24, 555 N.E.2d 273; *see also Santiago v. Greyhound Lines, Inc.,* 956 F.Supp. 144 (N.D.N.Y.1997) (discussing *Hall* ). The nature of the harm for which the plaintiff was seeking relief—injury

to personal and professional reputation—was traditionally redressed through the tort of defamation. *Id.* The plaintiff, however, was precluded from asserting that cause of action because absent a showing of actual malice the detectives had a qualified privilege to disclose the polygraph results to the employer. *Id.* at 32–33, 556 N.Y.S.2d at 24–25, 555 N.E.2d 273.

Finding a dearth of helpful precedent, the Court of Appeals turned to policy considerations to determine whether a "new" cause of action should be recognized. The Court found significant the fact that several statutes provided some relief to persons aggrieved by unreliable polygraph examinations. *Id.* More persuasive was the lack of reference to polygraph tests in the labor code, despite the fact that "psychological stress evaluator" examinations are expressly prohibited. *Id* (citing N.Y. Lab. Law 734[1] & 735[1] [McKinney 1988] ). Finally, the Court of Appeals found the provisions of the Employee Polygraph Protection Act of 1988, Pub.L. 100–347, 102 Stat. 646 (codified at 29 U.S.C. §§ 2001–2009), particularly relevant in determining whether to recognize a new tort. That Act restricts the use of workplace polygraph testing, and authorizes civil and injunctive actions by the Secretary of Labor and private actions by aggrieved employees. The existence of this Act persuaded the Court of Appeals to decline to recognize a new tort remedy.

In *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 351–54 (Tex.1995), another case cited by LabCorp, the Supreme Court of Texas relied heavily on *Hall* in holding that a drug tester retained by an employer to screen a potential employee owes no duty to that employee to warn her about the possible effects of consuming poppy seeds prior to the test.

However, in a recent, thoughtful opinion by a district court in this Circuit, it was observed that "[a]uthorities from other jurisdictions are mixed" and rather sparse. *Santiago v. Greyhound Lines, Inc.,* 956 F.Supp. 144 (N.D.N.Y.1997) (citing cases). As the Fourth Circuit observed, although the "courts ... are somewhat divided[, the] overall trend is ... to recognize the existence of a limited duty on the part of the laboratory to employees who are the subject of the tests." *Cooper v. Laboratory Corp. of America Holdings, Inc.,* 150 F.3d 376, 380 (4th Cir.1998) (citing *Stinson v. Physicians Immediate Care, Ltd.,* 646 N.E.2d 930, 934, 207 Ill.Dec. 96, 269 Ill.App.3d 659 [Ill.App. 1995] [laboratory is better placed to guard against injury and to bear the financial burden of ensuring test accuracy than an individual who would be "wrongly maligned by a false positive report"]; *Devine v. Roche Biomedical Laboratories,* 659 A.2d 868, 871 n. 2 [Me. 1995] [assuming the existence of duty from a laboratory to the plaintiff but finding no negligence]; *Lewis v. Aluminum Co. of America, Laboratories,* 588 So.2d 167, 170–71 [La. App. 1991] [laboratory has a duty to perform tests in a non-negligent fashion]; *Elliott v. Laboratory Specialists, Inc.,* 588 So.2d 175, 176 [La.App. 1991] [finding that the "risk of harm in our society to an individual because of a false-positive drug test is so significant that any individual wrongfully accused of drug usage by his employer is within the scope of protection under the law"] ). Interestingly, the district court in *Santiago* found that "the *Hall* case, while persuasive and helpful, is not controlling [in cases concerning urine drug testing]. Polygraphs and urinalyses are distinct enough that this court believes the New York Court of Appeals would engage in fresh analysis to decide whether or not the common law of this state recognizes the action [the plaintiff] is attempting to pursue." *Id.* at 149. This Court agrees.

In *Santiago,* the plaintiff was a bus driver for Greyhound, which required its employees to have a routine physical examination and drug screen every two years. The plaintiff went to the doctor who was hired by Greyhound. The plaintiff later sued the doctor for negligence in collecting the sample, which tested positive for drugs. *Id.* at 145–47. Under these circumstances, the *Santiago* Court determined that the doctor "had a duty to Santiago to collect his specimen with due care." *Id.* at 153.

In reaching this conclusion, the Court first examined social considerations recommending that judicial relief be available to redress

the consequences of negligent polygraph examinations, and found them strong, as the Court of Appeals had done in *Hall*. *Id.* at 149–50. The Court observed that drug screening has become commonplace in employment environments, and that policy reasons have been advanced for curtailment or regulation of these tests, many of which are not performed in accordance with National Institute on Drug Abuse (NIDA) guidelines. *Id.* at 150. The *Santiago* Court also noted that "[a]lthough the court presumes drug testing is significantly more accurate, if done correctly, than polygraph testing, the former procedure may also suffer from a false aura of infallibility. One statistical study found that 'two out of every five workers testing positive truly are drug free.'" *Id.* (citing Donald T. Barnum & John M. Gleason, The Credibility of Drug Tests: A Multi–Stage Bayesian Analysis, 47 Indus. & Lab.Rel. Rev. 610, 616 [1994]). The Court also observed that drug screens are plagued by problems such as "cross-reactivity"—namely, that innocent items like poppy seeds will be confused with illicit substances. *Id.* at 150–51.

Despite these problems, the generally held belief in the accuracy of drug tests "may lead employers to repose undue confidence in their results." *Id.* at 151 (quoting *Hall*, 76 N.Y.2d at 34, 556 N.Y.S.2d at 25, 555 N.E.2d at 277). The Court emphasized that the harm to employees falsely accused is significant, even devastating. *Id.* "An employee can be shut out of the job market as a result of a tainted or negligent test result or report. The stigma as a drug user can cast doubt on the future prospects of employment, even if the test is later discovered to be a false positive. In a company that is downsizing, a mark or suspicion of any kind may result in an employee's termination and long-term unemployment." *Id.* (quoting David W. Lockard, "Protecting Medical Laboratories from Tort Liability for Drug Testing," 17 J. Legal Med. 427, 428 [1996]).

Against these harms, the Court balanced the recognition that employee "drug abuse contributes to increased absenteeism, decreased productivity, and in many cases an increased risk of workplace injury." *Id.* (citations omitted).

In addition, the Court noted that there are no New York statutes specifically regulating drug testing, as there are in some states *Id.* (Citations omitted). Significantly, the defendant in *Santiago*, like LabCorp, pointed to the Omnibus Transportation Employee Testing Act of 1991, as support for the conclusion that no judicial remedy for the plaintiff's position should be recognized. *Id.* at 152. The *Santiago* Court appropriately rejected this theory, however, because "the Testing Act does not provide the substantive protections for employees injured by improper testing that the Polygraph Act does. There is no express provision for an employee civil action in the former. The only sanctions mentioned are those that can be taken against transportation workers testing positive." *Id.* (Citations omitted) (citing 49 U.S.C. § 31306[f]). As the *Santiago* Court aptly put it: "Defendant compares apples and oranges in drawing analogies between the Polygraph Act and the Drug–Free Workplace and Transportation Worker Testing Acts." *Id.*

This court concurs with the opinion in *Santiago* that the New York Court of Appeals, undertaking an analysis tracking the *Hall* decision, would recognize a common law cause of action under the facts in this case. In so finding, the Court observes an additional, critical distinction between polygraph examinations and urinalysis drug testing which warrants the recognition of a tort cause of action based on the latter. Specifically, polygraph evidence is not admissible in evidence, while drug tests generally are admissible. For this reason, one who is the victim of a negligently administered urinalysis faces significantly more damaging and far-reaching consequences than would occur in the case of an improper polygraph examination.

Accordingly, LabCorp's motion to dismiss the negligence causes of action is denied.

## III. CONCLUSION

Having reviewed the parties' submissions and heard oral argument, and for the reasons stated above, it is hereby

**ORDERED,** that the motions to dismiss the Complaint by the defendants LabCorp and University Services are denied in their entirety.

**SO ORDERED.**