BRADFORD L. STINSON, Indiv. and on Behalf of All Persons Similarly Situated, Plaintiff-Appellant, v. PHYSICIANS IMMEDIATE CARE, LIMITED, Defendant-Appellee.

Second District    No. 2—94—0969

Opinion filed February 16, 1995.

James D. Sparkman, of Vella, Sparkman & Altamore, P.C., of Rockford, for appellant.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, P.C., of Peoria, and Douglas J. Pomatto, of Heyl, Royster, Voelker & Allen, of Rockford, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Bradford Stinson, suing individually and on behalf of all similarly situated persons, appeals the dismissal of his complaint alleging that the defendant, Physicians Immediate Care Limited, was negligent in performing a drug test on him and reporting a false positive result. The central issue for review is one of first impression in Illinois: whether a laboratory which performs drug-screening tests at the behest of an employer owes a duty of care to an employee who submits to a drug test.

In count I, the plaintiff alleged that his employer required him to have a drug-screening test performed at the defendant's facility. The defendant collected a urine specimen from the plaintiff and issued a report to the plaintiff's employer that the specimen tested positive for cocaine. The plaintiff alleged that the test result was false or, in the alternative, the report of the test result was false. The plaintiff further alleged that the defendant had a duty to act with care in collecting and handling the specimen and in reporting the test result to the plaintiff's employer and that the defendant breached this duty by committing one or more of the following negligent acts: (1) failed to instruct its employees of the danger of specimen contamination; (2) failed to use specimen containers with sealable and tamper-evident lids; (3) failed to seal the specimen containers; (4) failed to obtain the plaintiff's initials or otherwise identify the specimen as belonging to the plaintiff; (5) conducted the drug-screening test so that the results were not accurate and were in error; (6) erroneously tested and reported that the plaintiff had cocaine in his body; and (7) failed to use routinely followed precautionary procedures, including the use of

sterile specimen containers, the use of tamper-evident seals, the use of identifying marks on specimen containers, and otherwise conducted the drug-screening test so that the results erroneously diagnosed cocaine in the plaintiff's body. As a result of the defendant's alleged negligence, the plaintiff was wrongfully dismissed from his employment; lost money as a result of not being able to work; was publicly humiliated and suffered mental and emotional anguish; and spent time and money to restore his employment and good reputation. Count II alleged a class action based on the allegations of count I. See 735 ILCS 5/2—801 (West 1992).

The defendant filed a motion pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) asserting that count I should be dismissed because it failed to state any facts showing a relationship between the parties on which to predicate a duty and that count I established only a duty to the plaintiff's employer. The defendant further complained that count I pleaded only conclusions instead of ultimate facts to show that the defendant breached its duty and that the plaintiff's injuries proximately resulted. In attacking count II, the defendant first argued that it should be dismissed because count I failed to state a cause of action. The defendant further argued that count II failed to set forth the prerequisites for maintaining a class action.

The trial court dismissed both counts without prejudice, but the plaintiff elected to stand on the complaint. Therefore, the court entered an order dismissing the complaint with prejudice. The plaintiff then appealed.

■ Before addressing the merits of the dismissal of count I, we point out that we need not address the contentions related to the dismissal of count II. The plaintiff had not moved to certify the class, and the court's dismissal of that count was predicated on its dismissal of count I. "[N]o class action can proceed unless a cause of action is stated." (*Schlessinger v. Olsen* (1981), 86 Ill. 2d 314, 318.) Thus, if count I fails to state a cause of action, count II cannot stand; if count I states a cause of action, count II may stand, but the issue of class certification is not relevant to the motion to dismiss and should not be decided until the plaintiff raises it (*Schlessinger*, 86 Ill. 2d at 318). Consequently, our resolution of the issue of the dismissal of count II depends on our resolution of the dismissal of count I.

■ In reviewing the dismissal of a complaint pursuant to section 2—615, we must determine whether the complaint, when considered in the light most favorable to the plaintiff, alleges facts sufficient to set forth a cause of action. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 46.) We are not required to defer to the trial court's judgment, as our

review is *de novo.* (*T&S Signs, Inc. v. Village of Wadsworth* (1994), 261 Ill. App. 3d 1080, 1084.) A trial court should dismiss a complaint only if it is clear that no set of facts can be proved which will entitle the plaintiff to recover. (*People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 11.) In assessing the sufficiency of the complaint, we must take as true all well-pleaded facts and reasonable inferences drawn from those facts. (*Weinberger v. Bell Federal Savings & Loan Association* (1994), 262 Ill. App. 3d 1047, 1049-50.) However, a section 2—615 motion does not admit conclusions of law or fact which are not supported by specific allegations. *Hume & Liechty Veterinary Associates v. Hodes* (1994), 259 Ill. App. 3d 367, 369.

■ For purposes of review, we must take as true the plaintiff's allegation that the test result was a false positive or that the test result was negative but that the defendant wrongly reported that the result was positive. However, the defendant argues that the allegations of count I are not sufficiently specific in that it pleads only conclusions of fact. We disagree. The plaintiff need not set forth his evidence in the complaint, but is required to allege the ultimate facts. (*Zeitz v. Village of Glenview* (1992), 227 Ill. App. 3d 891, 894.) A complaint is sufficient if it contains such information as to inform the defendant of the nature of the claim against it. (735 ILCS 5/2—612(b) (West 1992).) Moreover, "[w]here facts of necessity are within defendant's knowledge and not within plaintiff's knowledge, a complaint which is as complete as the nature of the case allows is sufficient." (*Yuretich v. Sole* (1994), 259 Ill. App. 3d 311, 313.) Here, the reason for the false positive test result or false positive report is a matter within the exclusive knowledge of the defendant. The plaintiff set forth ultimate facts which inform the defendant of the nature of the claim. We conclude that the allegations of the complaint are sufficiently specific.

We now turn to the core issue of this appeal: whether, as a matter of law, the defendant owed a duty to the plaintiff. To state a cause of action for negligence, the complaint must allege that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the plaintiff's injury was proximately caused by the breach. (*DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, 70.) Whether a duty exists is a question of law which depends on whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. (*Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542.) "In considering whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of

guarding against it and the consequences of placing that burden on the defendant." *Gouge*, 144 Ill. 2d at 542.

According to the plaintiff, the relationship between the parties was such that a duty should be imposed on the defendant. In arguing that count I sets forth only a duty to the plaintiff's employer, the defendant confuses concepts of contract and tort law. There need not be a contract between the plaintiff and the defendant for the defendant to owe a tort duty. For example, in *McLane v. Russell* (1989), 131 Ill. 2d 509, 515, the supreme court ruled that, in an attorney malpractice case, an attorney may owe a duty to a third party if the nonclient can show that he was the intended beneficiary of the attorney-client relationship.

In a case very similar to the present one, *Lewis v. Aluminum Co. of America* (La. Ct. App. 1991), 588 So. 2d 167, cited by neither party, an employee sued a drug-testing laboratory for falsely reporting to his employer that he had failed the drug test. The court found that the drug-testing laboratory owed a duty to the plaintiff, pointing out that the plaintiff was known to the defendant, and, when the defendant analyzed the plaintiff's specimen, it knew that negligent testing could wrongfully identify the plaintiff as a drug user. The defendant also was aware that, if the test results it submitted to the plaintiff's employer were inaccurate, the plaintiff's reputation and employment opportunities would be harmed. (*Lewis*, 588 So. 2d at 170.) Similarly, in *Elliott v. Laboratory Specialists, Inc.* (La. Ct. App. 1991), 588 So. 2d 175, another case involving the same drug-testing laboratory, the court explained:

> "We also find the existence of a non-contractual obligation between Elliott and LSI. To suggest that LSI does not owe Elliott a duty to analyze his body fluid in a scientifically reasonable manner is an abuse of fundamental fairness and justice. LSI should be held responsible for its conduct. ***
>
>           * * *
>
> We find that drug testing laboratories (acting as independent contractors) owe a duty of care to the testee/employee, regardless of the contractual arrangement between the lab and the employer. Privity of contract should never excuse a duty imposed by law on the conduct of individuals towards another in a reasonable society." *Elliott*, 588 So. 2d at 176.

In another instructive case, *Merrick v. Thomas* (1994), 246 Neb. 658, 522 N.W.2d 402, the complaint alleged that the plaintiff was a prospective employee who had to take a merit test as a prerequisite to employment. The defendant merit commission erroneously reported to the employer that she passed the test. She was offered

employment and accepted the position. Subsequently, the employer learned that she had failed the test and terminated her employment. The plaintiff sued the merit commission for negligence. The supreme court of Nebraska held that the plaintiff alleged sufficient facts to show that there was a relationship between the plaintiff and the merit commission which created a duty. *Merrick,* 246 Neb. at 663, 522 N.W.2d at 406-07.

■ We agree with *Lewis, Elliott,* and *Merrick* that there is a close relationship between a plaintiff and a defendant which had a contract with the plaintiff's employer if it is reasonably foreseeable that the plaintiff will be harmed if the defendant negligently reports test results to the employer.

Here, the injury, that the plaintiff would be terminated from his employment, is not only foreseeable, but also is a virtual certainty in the event of a positive drug test result. In addition, the likelihood of injury is great; the plaintiff allegedly lost his job and was hindered in his efforts to find other employment because of the false positive drug test report. The first two factors favor imposing a duty. We now consider the two remaining factors, the magnitude of guarding against the injury and the consequences of placing that burden upon the defendant.

" ' "[D]uty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' " (*Curatola v. Village of Niles* (1993), 154 Ill. 2d 201, 215, quoting W. Keeton, Prosser & Keeton on Torts § 53, at 358 (5th ed. 1984).) The risk of harm in our society to an individual because of a false-positive drug test is so significant that failure to find protection under our law would be a step backwards for the protection of the individual. (*Elliott,* 588 So. 2d at 176.) "As information services become more prevalent in our economy and society, the information providers[, such as drug-testing laboratories,] should be held accountable for the information they provide. Such information should be complete and not misleading. Credit-reporting agencies have long been held to the exercise of due care in securing and distributing information concerning the financial standing of individuals, firms, and corporations." (*Doe v. SmithKline Beecham Corp.* (Tex. App. 1993), 855 S.W.2d 248, 255-56.) We agree with the *Elliott* and *Doe* courts that public policy requires the imposition of a duty here. The drug-testing laboratory is in the best position to guard against the injury, as it is solely responsible for the performance of the testing and the quality control procedures. In addition, the laboratory, which is paid to perform the tests, is better able to bear the burden financially than the individual wrongly maligned by

a false positive report. We therefore hold that a drug-testing laboratory owes a duty of reasonable care to persons whose specimens it tests for employers or prospective employers.

The defendant's reliance on *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, and *O'Hara v. Holy Cross Hospital* (1990), 137 Ill. 2d 332, is misplaced. In *Kirk*, unlike here, the court found that there was no duty to the third party because the injury was not reasonably foreseeable and it would be an unreasonable burden to hold a hospital liable for harmful acts committed by patients who have been released. (*Kirk*, 117 Ill. 2d at 526.) In *O'Hara*, the court found that, although it was foreseeable that a bystander in the emergency room would faint, the consequences of placing the burden on the defendant was too great because it would erode the emergency room's primary function by shifting attention away from the patient in need of treatment to the nonpatient bystander. (*O'Hara*, 137 Ill. 2d at 342.) Moreover, in both cases, the public policy of reducing the burden in the health care professions, as embodied in the medical malpractice law, militated against imposing a duty to nonpatients. (*O'Hara*, 137 Ill. 2d at 342; *Kirk*, 117 Ill. 2d at 527.) By contrast, here, we have concluded that public policy supports the imposition of a duty on the defendant.

In summary, count I alleges that the defendant performed a drug screening test on the plaintiff's urine specimen; the defendant had a duty to the plaintiff to act with reasonable care in collecting, handling, and testing the specimen; the defendant falsely reported to the plaintiff's employer that the result was positive; the false report was the result of any of several allegedly negligent acts; and the plaintiff lost his job and suffered other damages as a result of the defendant's negligence. These allegations are sufficient to state a cause of action for negligence. We therefore conclude that the trial court erred in dismissing counts I and II for failure to state a cause of action.

For the foregoing reasons, the order of the circuit court of Winnebago County dismissing the plaintiff's complaint is reversed, and the cause is remanded for further proceedings not inconsistent with this decision.

Reversed and remanded.

McLAREN, P.J., and HUTCHINSON, J., concur.