**Maxine B. COOPER, Plaintiff–Appellant,**

**v.**

**LABORATORY CORPORATION OF AMERICA HOLDINGS, INCORPORATED, Defendant–Appellee,**

**and**

**Esab Group, Incorporated; Roche Biomedical Laboratories, Incorporated, Defendants.**

**No. 97–1428.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 1, 1997.

Decided July 17, 1998.

---

6. Given our holding, we need not address appellants' Suspension Clause argument.

**ARGUED:** Stuart Wesley Snow, Dusenbury & Snow, P.A., Florence, South Carolina, for Appellant. Jane Thompson Davis, Nelson, Mullins, Riley & Scarborough, Charleston, South Carolina, for Appellee. **ON BRIEF:** Lisa W. Caldwell, Nelson, Mullins, Riley & Scarborough, Charleston, South Carolina; David E. Dukes, Nelson, Mullins, Riley & Scarborough, Columbia, South Carolina, for Appellee.

Before ERVIN and HAMILTON, Circuit Judges, and WILSON, Chief United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge ERVIN wrote the opinion, in which Judge HAMILTON and Chief Judge WILSON joined.

## OPINION

ERVIN, Circuit Judge:

Maxine Cooper, the appellant in this diversity case, brought suit against her employer, Esab Corporation, after she was fired because her urine tested positive for alcohol in violation of company policy. Cooper also sued the laboratory that did the urine test, Laboratory Corporation of America Holdings ("LCAH"), alleging negligence, defamation, and intentional interference with contractual relations. Cooper settled her claims against Esab, but continued to prosecute her claims against LCAH, the appellee in this case. She now appeals the district court's grant of summary judgment in favor of LCAH on all her claims. We affirm the judgment of the district court.

### I.

On March 21, 1994, Cooper submitted a urine sample to her employer, Esab, for drug and alcohol testing. Cooper had agreed to undergo random testing for drug and alcohol use when she resumed her employment after participating in the Employee Assistance Program for gambling addiction. It is unclear why Cooper's gambling addiction should have led to random alcohol and drug testing, but such was the agreement between her and her employer on her return to work.

Cooper is a diabetic, and she does not consume alcohol. She controls her diabetes through diet and occasionally through use of a medication called Glynase 6, which is used almost exclusively for the treatment of diabetes. Generally, when submitting a urine sample for testing, an employee is required to list the medications she is currently taking. When Cooper submitted her urine sample for testing, she informed Esab that she took Glynase 6, which Esab duly noted on the form that accompanied Cooper's urine sample when it was transmitted to the laboratory.

LCAH did an immunoassay test on Cooper's urine, which tested positive for alcohol at a level of .134%. LCAH then performed a gas chromatograph test on Cooper's urine, which indicated a blood alcohol level of .258%. Normally, the disparity between the immunoassay test and the gas chromatograph test should be no more than 10–15%, much less than the discrepancy in this case. The disparity is consistent with Cooper's theory that her urine tested positive for alcohol due to her diabetes; the urine of a diabetic may contain glucose, which will ferment into alcohol when mixed with yeast or bacteria. Continuing fermentation would explain the disparity between the initial test results and the results of the gas chromatograph test. Fermentation can be prevented by adding a preservative, sodium fluoride, to the urine sample, or by refrigerating the urine sample. LCAH followed neither of those procedures.

After LCAH reported the test results to Greg Cain, Esab's designated representative, Cain informed Cooper that her urine tested positive for alcohol. Cooper informed him that she was a diabetic and did not consume alcohol, and that the test must be mistaken. She provided another urine sample on April 4, which Cain submitted to LCAH for test-

ing. That sample again tested positive for alcohol. Cooper had also gone to her family doctor to have her blood and urine tested for alcohol on April 5. The results of that test, which she gave to Cain, were negative. Cain and Esab, however, chose to rely exclusively on LCAH's results, and on April 7, Cain terminated Cooper for having violated Esab's policy concerning alcohol consumption on the job.

Cooper initially filed an action against both Esab and LCAH. Her claims against Esab included breach of employment contract, retaliatory discharge, violations of the South Carolina Disabilities Act, and defamation. Cooper settled all claims against Esab, leaving only this action against LCAH.

## II.

■ We review *de novo* grants of summary judgment. *Kimsey v. City of Myrtle Beach*, 109 F.3d 194, 195 (4th Cir.1997). In order to prevail on a motion for summary judgment, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence of the nonmoving party is to be believed, and all inferences drawn in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.

Cooper claims negligence, defamation, and intentional interference with contractual relations against LCAH.

### A.

Cooper suggests LCAH was negligent in two ways: first, she contends that the lab should have changed its testing procedures to counteract the likely effect of Cooper's diabetes on the results of the urine test; and second, that the lab should have informed Esab that her urine likely tested positive for alcohol because of her diabetes and not because of the ingestion of alcohol. She does not allege that LCAH reported inaccurate results.

■ Cooper can recover in negligence only by showing that (1) LCAH owed her a duty of care; (2) LCAH breached that duty by negligent act or omission; and (3) her damage proximately resulted from that injury. *Snow v. City of Columbia*, 305 S.C. 544, 409 S.E.2d 797, 803 (1991). In a professional negligence cause of action, a plaintiff must establish that "the professional failed to conform to the generally recognized and accepted practices in his profession." *Doe v. American Red Cross Blood Servs.*, 297 S.C. 430, 377 S.E.2d 323, 326 (1989). Professional negligence is usually proved through the use of expert testimony. *Hoeffner v. Citadel*, 311 S.C. 361, 429 S.E.2d 190, 192 (1993).

In order to prevail on her negligence claim, Cooper first has to establish that LCAH owed her a duty. LCAH does not have a statutorily established duty to Cooper. Neither South Carolina nor the federal government has issued guidelines on workplace testing for private employers. LCAH is certified to provide testing services for federal government agencies under the Mandatory Guidelines for Federal Workplace Drug Testing Programs ("Guidelines"), 59 F.R. 29908 (June 9, 1994). The Guidelines do not, however, govern a laboratory's duties to private employers, though private employers must be notified if a laboratory loses its certification. 59 F.R. at 29914–15. The Guidelines also do not apply to alcohol testing.

Surprisingly, given the increased frequency of workplace testing for drug and alcohol use, the case law on the issue is rather sparse. Neither South Carolina, whose law applies in this diversity action, nor the Fourth Circuit has expressed an opinion on the issue. Those courts that have are somewhat divided. The overall trend is for courts to recognize the existence of a limited duty on the part of the laboratory to employees who are the subject of the tests. *See, e.g., Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill.App.3d 659, 207 Ill.Dec. 96, 646 N.E.2d 930, 934 (Ill.App.1995) (laboratory better placed to guard against injury and to bear the financial burden of ensuring test accuracy than an individual who would be "wrongly maligned by a false positive report"); *Devine v. Roche Biomedical Lab.,*

659 A.2d 868, 871 n. 2 (Me.1995) (assuming existence of duty from laboratory to plaintiff but finding no negligence in case at bar); *Lewis v. Aluminum Co. of Am.*, 588 So.2d 167, 170–71 (La.App.1991) (laboratory has duty to perform test in non-negligent fashion); *Elliott v. Laboratory Specialists, Inc.*, 588 So.2d 175, 176 (La.App.1991) (finding "risk of harm in our society to an individual because of a false-positive drug test is so significant that any individual wrongfully accused of drug usage by his employer is within the scope of protection under the law"); *cf. Santiago v. Greyhound Lines*, 956 F.Supp. 144, 153–54 (N.D.N.Y.1997) (lab has no duty to instruct employer in proper collection procedures, which activity is collateral to the actual collecting of the sample; more limited duty may well exist given lack of other remedies for employees); *but see Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 316 (5th Cir.1995) (court's best *Erie* "guess" that Texas courts would not recognize duty); *Herbert v. Placid Refining Co.*, 564 So.2d 371, 374 (La.App.1990) (finding plaintiff's cause of action against lab was essentially negligent interference with contract rights, which is not a cognizable tort in Louisiana); *but cf. SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353–54 (Tex.1995) (laboratory had no duty to inform employee or employer of likely effect of ingesting poppy seeds on results of drug test).

We do not choose to make our own *Erie* "guess" as to the likelihood of South Carolina courts recognizing a cause of action in negligence by an employee against a laboratory in a drug or alcohol testing case. Assuming, without deciding, that Cooper can bring a negligence case against LCAH, she has utterly failed to establish that LCAH breached its professional standard of care.

■ The only expert Cooper offered in support of her case was Mr. Sweeney, whom the district court refused to qualify as an expert. We review the trial court's decision to exclude expert testimony for abuse of discretion. *Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir.1993).

Cooper withdrew Sweeney as an expert on whether there is a standard of care in the drug testing industry to interpret test re-

sults; she offered his testimony only to prove that the results offered by LCAH were inaccurate or misleading, and that the positive alcohol reading in the urine specimen was the result of fermentation, rather than alcohol consumption. He was also to testify that the addition of sodium fluoride, or refrigeration of the sample, would have prevented fermentation and likely resulted in a negative alcohol reading.

■ The district court excluded Sweeney's testimony because he was not a toxicologist and had no experience, beyond a general knowledge of chemistry, of forensic toxicology. Because Sweeney could not qualify as an expert in a particular scientific field, he could not testify as an expert under the standard articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Cooper contests Sweeney's exclusion, stating that he was offered as a technical expert under Fed.R.Evid. 702, and thus did not need to meet the more stringent standards applicable to scientific testimony.

■ Assuming that Cooper's distinction between a "scientific" expert subject to *Daubert* standards and a "technical" expert subject to less rigorous requirements is valid (the Supreme Court has granted certiorari to resolve that precise question; *see Carmichael v. Samyang Tire, Inc.*, 131 F.3d 1433, 1435–36 (11th Cir.1997) (finding *Daubert* applicable only in "scientific" context), *cert. granted sub nom. Kumho Tire Co. v. Carmichael*, —— U.S. ——, 118 S.Ct. 2339, 141 L.Ed.2d 711 (1998)), Sweeney does not qualify as a technical expert. Under Rule 702, an expert must have either knowledge, skill, experience, training, or education. These are disjunctive; an expert can qualify to testify on any one of the grounds. *Kopf*, 993 F.2d at 377. The magistrate judge, whose report was adopted by the district court, examined Sweeney's education, experience, and training, and determined that he failed to qualify under any of those categories. Sweeney has no training, experience, or skill in the field of urine alcohol testing. He had one course on toxicology approximately thirty years prior to the start of this case, and

his knowledge derives from that course and from a basic knowledge of chemistry. Sweeney does have experience with breath alcohol testing, but he was not offered as an expert in that field. Thus, the district court did not abuse its discretion in excluding Sweeney's expert testimony.

Cooper presented no other evidence establishing either the requisite standard of care or any violation of that standard by LCAH. Her negligence claim therefore fails as a matter of law.

### B.

Cooper also alleges that LCAH defamed her by publishing her test results to Esab because the results falsely implied she had been consuming alcohol. The district court concluded that Cooper's claim failed on two grounds: first, the report was true, and any inference of alcohol consumption was done by Esab; and second, LCAH's actions were subject to a qualified privilege, which Cooper did not overcome by any showing of actual malice.

 The district court's conclusion that LCAH is protected by qualified privilege is accurate. "A communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty" even though it is otherwise actionable. *Constant v. Spartanburg Steel Prod., Inc.,* 316 S.C. 86, 447 S.E.2d 194, 196 (1994). Qualified privilege can be overcome if the plaintiff proves actual malice on the part of the publisher of the information in question. *Id.* Cooper does not contest that LCAH was protected by the qualified privilege, but argues that LCAH showed actual malice in publishing information to Esab which LCAH knew would result in Cooper's termination. To prove actual malice, however, Cooper must show that LCAH acted "recklessly or wantonly, or with conscious disregard of the plaintiff's rights." *Id.* Cooper has made no such showing. LCAH disclosed the results of the test only to Cain, Esab's designated representative. As already demonstrated, LCAH did not fall below the standard of care, or breach any duty it owed to Cooper.

LCAH's actions were in no way reckless or wanton.

 LCAH's "truth" defense is also meritorious. Cooper does not allege that the lab's result was a "false positive" such that her urine should have tested negative for alcohol. Rather, she alleges the alcohol resulted from fermentation rather than alcohol consumption. Even assuming that her contention is correct, LCAH's report that her urine tested positive for alcohol was factually true. An action for defamation may not be based on a true statement. *Anderson v. Stanco Sports Library, Inc.,* 542 F.2d 638, 641 (4th Cir.1976); *Restatement (Second) of Torts* § 581A (1977) ("Restatement"). South Carolina does recognize, however, that defamation may be actionable even if it does not occur in a direct manner. Thus, an "insinuation is actionable as a positive assertion if it is false and malicious and its meaning is plain." *Eubanks v. Smith,* 292 S.C. 57, 354 S.E.2d 898, 901 (1987). On that basis, the South Carolina Supreme Court permitted a plaintiff to go to trial for a claim similar to that of Cooper. *Tyler v. Macks Stores,* 275 S.C. 456, 272 S.E.2d 633 (1980). In *Eubanks,* the plaintiff had been fired soon after having taken a polygraph examination over his protests. He alleged that the proximity of the two events gave his fellow employees and others the belief that he had been discharged for some wrongful activity. *Id.* at 634. The plaintiff in *Eubanks,* however, would still have had to show the insinuation was false and malicious, as would Cooper. She could conceivably meet the "plain meaning" condition—LCAH probably knew that a positive alcohol reading would lead the employer to believe that Cooper had consumed alcohol. "The meaning of a communication is that which the *recipient* correctly, or mistakenly but reasonably, understands that it was intended to express." *Restatement* § 563 (emphasis added). Cooper still cannot show that LCAH was in any way malicious in its transmittal of the test results to Esab. Thus, her defamation claim must fail.

### C.

 Cooper argues that LCAH interfered with her contractual relations with

Esab by providing information that caused her to be fired. In order to prevail on such a claim, a party must prove (1) the contract; (2) the wrongdoer's knowledge of the contract; (3) its intentional procurement of the breach; (4) absence of justification; and (5) resulting damages. *Todd v. South Carolina Farm Bureau Mut. Ins. Co.,* 287 S.C. 190, 336 S.E.2d 472, 473 (1985). An employment contract terminable at will is a contract upon which an action for intentional interference may be brought if the employee would have continued in the job indefinitely but for the interference. *Todd v. South Carolina Farm Bureau Mut. Ins. Co.,* 283 S.C. 155, 321 S.E.2d 602, 607 (1984), *rev'd on other grounds,* 287 S.C. 190, 336 S.E.2d 472 (1985). Cooper has therefore satisfied the first element of the test. She also contends that she meets the second requirement because LCAH knew, or should have known, that she was either a prospective or current employee of Esab. Her reasoning on this point is persuasive; LCAH's representative admitted that LCAH knew Esab had it perform tests as part of its drug-free workplace program.

Cooper's claim fails, however, as to the next two requirements. She can show neither that LCAH intentionally procured her termination nor the absence of justification for its action in reporting the results of the urine test to Esab. In *Todd,* the plaintiff could show that an investigative agency accused the plaintiff of misconduct and fabricated an informant to bolster its accusations. *Id.* Cooper makes no showing that LCAH intended that she should be fired, or that it was not justified in performing the tests it ran and finding a positive result.

### IV.

The district court's grant of summary judgment is affirmed on all grounds.

*AFFIRMED.*