# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Wilmot Shaw, Plaintiff,

v.

Psychemedics Corporation, Defendant.

Appellate Case No. 2017-002538

---

## CERTIFIED QUESTION

---

## ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

Timothy M. Cain, United States District Judge

---

Opinion No. 27869
Heard December 12, 2018 – Filed March 20, 2019

---

## CERTIFIED QUESTION ANSWERED

---

Donald Gist and Aaron Wallace, of Gist Law Firm, PA, of Columbia, for Plaintiff.

S. Michael Nail and Matthew K. Johnson, both of Greenville, and Michael Clarkson, of Boston, MA, all of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., for Defendant.

---

**CHIEF JUSTICE BEATTY:** We certified the following question from the United States District Court for the District of South Carolina:

> Under South Carolina law, does a drug testing laboratory that has a contract with an employer to conduct and evaluate drug tests owe a duty of care to the employees who are subject to the testing so as to give rise to a cause of action for negligence for failure to properly and accurately perform the test and report the results?

For reasons that will be discussed, we answer this question in the affirmative.

## I.    FACTS

Plaintiff is a former employee of BMW at its manufacturing facility in Spartanburg.  During his employment with BMW, Plaintiff was subject to random drug tests.  BMW contracted with Defendant to test the hair samples of BMW employees for the presence of drugs.  Plaintiff was selected for a random drug test, which was administered on-site by a contract nurse from a local hospital.  Defendant received Plaintiff's hair sample on April 12, 2014.  On April 21, 2014, BMW informed Plaintiff that, according to Defendant's analysis, his hair sample tested positive for cocaine and benzoylecgonine, the primary metabolite of cocaine. Though Plaintiff asserted that he had not used any illegal substances, BMW suspended Plaintiff pending an investigation.

On April 22, 2014, Plaintiff submitted a hair sample to an independent drug testing laboratory whose report determined that Plaintiff's hair tested negative for any illegal substances.  BMW refused to accept the independent laboratory's results but permitted Plaintiff to submit a second hair sample for analysis by Defendant. The second hair sample also tested positive for cocaine and benzoylecgonine.  BMW subsequently terminated Plaintiff due to the positive drug test results.  Plaintiff maintains that he is not and has never been a drug user.

Plaintiff filed an action against Defendant, alleging negligence and negligent supervision.  In response, Defendant filed a pre-answer motion to dismiss on the basis that Defendant did not owe a duty to Plaintiff.  In connection with Defendant's motion to dismiss, the district court entered an order certifying the aforementioned question to this Court.  We certified the question pursuant to Rule 244 of the South Carolina Appellate Court Rules ("SCACR").

## II.    STANDARD OF REVIEW

"In answering a certified question raising a novel question of law, this Court is free to decide the question based on its assessment of which answer and reasoning would best comport with the law and public policies of the state as well as the Court's sense of law, justice, and right." *Drury Dev. Corp. v. Found. Ins. Co.*, 380 S.C. 97, 101, 668 S.E.2d 798, 800 (2008).

## III.    LAW/ANALYSIS

Defendant argues an independent drug testing laboratory does not owe a duty of care to employees subject to the testing; therefore, Plaintiff cannot maintain a negligence action against Defendant.  Defendant further asserts that the relationship between a drug testing laboratory and employee is too attenuated to give rise to a duty.  We disagree.

An essential element in a negligence action is "the existence of a legal duty of care owed by the defendant to the plaintiff." *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845–46 (2011).  "The court must determine, as a matter of law, whether the law recognizes a particular duty." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135, 638 S.E.2d 650, 656 (2006).  "If there is no duty, then the defendant in a negligence action is entitled to judgment as a matter of law." *Id.* at 135–36, 638 S.E.2d at 656 (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999); *Ellis v. Niles*, 324 S.C. 223, 227, 479 S.E.2d 47, 49 (1996)).

Generally, "[t]here is no formula for determining duty; a duty is not sacrosanct in itself but only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." *Araujo v. S. Bell Tel. & Tel. Co.*, 291 S.C. 54, 57–58, 351 S.E.2d 908, 910 (Ct. App. 1986) (citing Prosser & Keaton, *On the Law of Torts* § 53 (5th ed. 1984)).  However, South Carolina courts "will not extend the concept of a legal duty of care in tort liability beyond reasonable limits." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 48, 644 S.E.2d 43, 46 (2007) (citing *Huggins v. Citibank, N.A.*, 355 S.C. 329, 333, 585 S.E.2d 275, 277 (2003)).

This Court has stated that "[a] tort-feasor may be subjected to tort liability for injury to a third party arising out of the tort-feasor's contractual relationship with another, despite the absence of privity between the tort-feasor and the third party." *Barker v. Sauls*, 289 S.C. 121, 122, 345 S.E.2d 244, 244 (1986) (citing *Terlinde v.*

*Neely*, 275 S.C. 395, 271 S.E.2d 768 (1980)). Additionally, "[t]he tort-feasor's liability exists independently of contract, and rests upon the tort-feasor's duty to exercise due care." *Id.* (citing *Edward's of Byrnes Downs v. Charleston Sheet Metal Co.*, 253 S.C. 537, 172 S.E.2d 120 (1970)). In *Barker*, we stated the following:

> The key inquiry is what duty, if any, is owed by the tort-feasor to the third party. It is essential to liability for negligence that the parties have some relationship recognized by law to support the duty owed by the tort-feasor. 57 Am. Jur. 2d *Negligence* § 36. This duty may be derived from the tort-feasor's contractual relationship with another.

*Id.* (citation omitted). Accordingly, a drug testing laboratory's duty to an employee subject to the testing may arise from the laboratory's contractual relationship with the employer. Furthermore, the lack of privity between the employee and laboratory does not preclude the imposition of a duty.

We also find that there is a sufficient relationship between a drug testing laboratory and an employee to support the recognition of a duty. The principal purpose of the contract between the laboratory and the employer is to test a given employee's biological specimen for the presence of drugs. Moreover, the laboratory possesses and exercises control over the employee's specimen at some point during—if not the entire duration of—the testing process. In addition, if the laboratory is negligent in testing the employee's specimen, it is foreseeable that the employee will likely suffer a direct economic injury due to the loss of employment.[1]

We note a host of public policy considerations that favor the recognition of a duty of care in this context. There is a significant public interest in ensuring accurate drug tests because countless employees are required to undergo drug testing as a condition of their employment. Drug testing laboratories have the greatest amount of control over the accuracy of the testing process.[2] *See, e.g.*, *Landon v. Kroll Lab.*

---

[1] South Carolina courts have made it clear that "foreseeability itself does not give rise to a duty." *S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc.*, 289 S.C. 373, 376, 346 S.E.2d 324, 325 (1986) (citing 65 C.J.S. *Negligence* § 4(2)). Although it is foreseeable that an employee's positive drug test will adversely affect employment, the decision to impose a duty in this context does not rest solely on foreseeability.

[2] We recognize that there may be some arrangements, like the facts in this case, where an actor other than the drug testing laboratory collects the specimen. If there

*Specialists, Inc.*, 999 N.E.2d 1121, 1124 (N.Y. 2013) (finding drug testing laboratory is in the best position to prevent harm). Conversely, employees have very little control, if any, over the testing procedures and methods used.

An employee who is terminated for a positive drug test faces immediate consequences, namely the loss of the employee's income and livelihood. Moreover, many employment applications inquire about an applicant's prior work history, including any instance of termination. As a result, the positive drug test and subsequent termination may hinder the employee as he or she seeks new employment. *See Duncan v. Afton, Inc.*, 991 P.2d 739, 745 (Wyo. 1999) ("[T]he likely effect of a false positive result is significant and devastating; employment will likely be terminated and future prospects of employment adversely impacted.").

Further, without the recognition of a duty, a terminated employee is often left without a means for redress, while the drug testing laboratory is effectively immunized from liability.[3] This risk is especially great in at-will states like South Carolina, in which an employer may terminate an employee at any time without reason or cause.[4] An employee terminated due to a false positive drug test may not fall under an exception to the at-will employment doctrine, and thus would have no recourse against his or her employer. Consequently, a drug testing laboratory is unlikely to face a contribution or indemnity lawsuit from an employer. Therefore, absent a duty of care, drug testing laboratories are able to avoid liability for their negligence.

Finally, the recognition of a duty in this context advances a major policy goal of tort law: deterrence. In short,

> [o]ne reason for making a defendant liable in tort for injuries resulting
> from a breach of his duty is to prevent such injuries from occurring.
> Underlying this justification is the assumption that potential

are separate entities involved at different stages of the testing process, a drug testing laboratory is liable only for its own negligence or the negligence of another actor properly imputed to the laboratory.

[3] *See* Karen Manfield, Comment, *Imposing Liability on Drug Testing Laboratories for "False Positives": Getting Around Privity*, 64 U. Chi. L. Rev. 287, 296–98 (1997).

[4] *Id.* at 297–98.

wrongdoers will avoid wrongful behavior if the benefits of that behavior are outweighed by the costs imposed by the payment of damages to victims.

F. Patrick Hubbard & Robert L. Felix, *The South Carolina Law of Torts* 7 (4th ed. 2011). A drug testing laboratory is more likely to implement measures that ensure better accuracy in its testing process if the laboratory owes a duty of care to an employee. *See Lewis v. Aluminum Co. of Am.*, 588 So. 2d 167, 170 (La. Ct. App. 1991) (stating that subjecting a drug testing laboratory to liability "should foster a greater sense of responsibility within it to perform its drug testing services in a skillful and competent manner").

Although some courts have declined to recognize a duty in this context, our decision is consistent with many other jurisdictions that have held a duty exists in similar circumstances.[5] Notably, courts of last resort in New York, Pennsylvania, and Wyoming have all determined that a drug testing facility owes a duty to the person subject to testing. *See Landon*, 999 N.E.2d at 1124–25 (holding drug testing laboratory owed duty to test subject to perform drug test "in keeping with relevant professional standards"); *Sharpe v. St. Luke's Hosp.*, 821 A.2d 1215, 1221 (Pa. 2003) (finding hospital owed employee a duty of reasonable care in collecting and handling urine specimen); *Duncan*, 991 P.2d at 740 (concluding drug testing company owed employee a duty of care in collecting, handling, and processing urine specimen).

## IV.   CONCLUSION

Based on the foregoing, we answer the certified question in the affirmative.

---

[5] *See, e.g.*, *Cooper v. Lab. Corp. of Am. Holdings, Inc.*, 150 F.3d 376, 379 (4th Cir. 1998) ("The overall trend is for courts to recognize the existence of a limited duty on the part of the laboratory to employees who are the subject of the tests."); *Quisenberry v. Compass Vision, Inc.*, 618 F. Supp. 2d 1223, 1230 (S.D. Cal. 2007) ("[L]aboratories have a duty to individuals whose specimens they test."); *Chapman v. LabOne*, 460 F. Supp. 2d 989, 1001 (S.D. Iowa 2006) (finding drug testing laboratory owed a duty to an employee when testing urine sample); *Stinson v. Physicians Immediate Care, Ltd.*, 646 N.E.2d 930, 934 (Ill. App. Ct. 1995) (stating laboratory owed "duty of reasonable care to persons whose specimens it tests for employers or prospective employers"); *Elliott v. Lab. Specialists, Inc.*, 588 So. 2d 175, 176 (La. Ct. App. 1991) (concluding laboratory acting as independent contractor owed duty of care to employee irrespective of contractual arrangement).

**CERTIFIED QUESTION ANSWERED.**

**KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**