**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210572-U

Order filed August 15, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| CURTIS GAYLORD, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-21-0572 |
| | ) | Circuit No. 20-L-17 |
| PRESENCE PAIN CARE and AEGIS | ) | |
| SCIENCES CORPORATION, | ) | Honorable |
| | ) | John C. Anderson, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices McDade and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The trial court did not err in dismissing plaintiff's three-count amended complaint pursuant to sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure, and the court's dismissal with prejudice was not an abuse of discretion.

¶ 2    Plaintiff, Curtis Gaylord, appeals from the Will County circuit court's order dismissing his complaint against Presence Pain Care (Presence) and Aegis Sciences Corporation (Aegis), alleging that defendants violated his constitutional rights by excluding him from a controlled substance medication program after testing positive for cocaine. Plaintiff argues, *inter alia*, that

the trial court erred in dismissing his three-count amended complaint with prejudice under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2020)) because he sufficiently alleged claims of negligence, breach of contract, and constitutional violations. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        On September 22, 2016, Gaylord entered a contract for controlled substance prescriptions with Presence, a clinic responsible for administering a pain medication program in affiliation with Saint Joseph Medical Center. According to the terms of the contract, Gaylord agreed to comply with random drug testing to document the proper use of the medication, as well as confirm compliance with the program. Paragraph 6 of the contract specifically stated that if Gaylord violated any of conditions of the agreement, including the use of illegal drugs, his treatment at Presence "may be ended immediately." (Emphasis in original.).

¶ 5        On January 5, 2018, Gaylord completed an oral drug test administered and collected at Presence. The sample was tested by Aegis, a laboratory contracted by Presence to analyze the specimen samples and report the results. The Aegis lab report indicated that Gaylord's sample tested positive for cocaine. On March 29, 2018, Gaylord attended a scheduled appointment at the clinic and was informed by a nurse practitioner that he had been dismissed from the controlled substance prescription program because he tested positive for an illegal drug.

¶ 6        On January 7, 2020, Gaylord filed a one-count complaint against Presence and Aegis as a self-represented litigant, claiming that defendants violated his constitutional rights by excluding him from the program without affording him the right to contest or appeal the "false-positive" finding of cocaine in the drug test. Both defendants filed motions to dismiss for failure to state a

2

cause of action pursuant to section 2-615 of the Code. After the parties briefed their motions, Gaylord orally requested leave to file an amended complaint, which the trial court granted.

¶ 7    On November 17, 2020, Gaylord filed a three-count amended complaint, asserting negligence and breach of contract in addition to his constitutional claim. Count I of the complaint claimed the lab results were inaccurate and defendants were negligent in failing to retest the sample at Gaylord's request. Gaylord alleged that Aegis reported the positive test result to Presence on January 9, 2018, and that between January 9 and March 28, 2018, he received no notice from Presence or Aegis that he tested positive and was given no opportunity "to prove a false-positive." Gaylord alleged that on March 29, 2018, he informed the nurse practitioner that the result "had to be a false[-]positive," but she refused to consider his explanation. He then contacted Aegis and informed an employee that he had a false-positive result. Aegis retested the specimen and again reported that the sample tested positive for cocaine. Gaylord asserted that defendants had a close relationship with him and owed him a duty under *Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill. App. 3d 659 (1995), that neither defendant "afforded [him] a chance to prove a false[-]positive," and that, as a result of their negligence, he suffered emotional and physical harm.

¶ 8    Counts II and III contained two narrative paragraphs without supporting argument. Count II asserted a breach of contract claim against Presence. Gaylord alleged, in a single paragraph, that "[Presence's] acts and/or omissions was [*sic*] a " 'Breach of Contract' being 'unconscionable' that plaintiff would agree to signing away any 'due process' or 'fairness' as stated by defendant, nurse practitioner." Count III summarily claimed that defendants violated Gaylord's fourth, fifth, and fourteenth amendment rights (U.S. Const., amend. IV, V, XIV) by excluding him from the program without allowing him the opportunity to contest the lab results.

3

In a single paragraph, Gaylord alleged that "his oral fluids (salvia) is [*sic*] deemed a 'property right' and fairness is mandatory and not discretional."

¶ 9 Both defendants filed motions to dismiss. Presence claimed that Gaylord's complaint should be dismissed pursuant to sections 2-615 and 2-619 of the Code. It argued that the amended complaint should be dismissed under section 2-615 for failure to plead a cause of action and that count II should be dismissed under section 2-619(a)(9) based on the terms of the controlled substance prescription contract. Aegis argued that Gaylord failed to state a viable cause of action against it and sought dismissal solely under section 2-615. In a written response, Gaylord again cited *Stinson* and maintained that his complaint was sufficient to state a cause of action. He also requested leave to file a second amended complaint.

¶ 10 On October 22, 2021, the trial court conducted a hearing on the motions via Zoom. Gaylord did not attend. At the conclusion of the hearing, the court granted defendants' motions and dismissed Gaylord's amended complaint with prejudice. The written court order granting the dismissal stated "Motions to Dismiss are granted with prejudice" and noted that Gaylord failed to appear for the hearing.

¶ 11 Gaylord filed a motion to vacate, which was denied. He then filed a motion to reconsider, claiming that he did not attend the October 22 hearing because he had difficulty accessing the proceedings electronically. A hearing was held during which the court assured Gaylord that the order dismissing his complaint was based on the merits rather than his failure to appear. The court issued a written order denying Gaylord's motion to reconsider, which stated that the complaint was "[d]ismissed with prejudice on 2-615 and 2-619 grounds," and further clarified that "the 10-22-21 order dismissing the case was entered due to defects in Plaintiff's claim and not solely on his failure to appear."

¶ 12                                    II. ANALYSIS

¶ 13          Gaylord argues that the trial court erred in dismissing his complaint on the pleadings with prejudice. He also claims the court erred in (1) dismissing his amended complaint "for failing to appear for a Zoom appearance," and (2) refusing to act on his "numerous outstanding Motions[,] Objections, Clarifications, [and] protective orders."

¶ 14          A section 2-615 motion to dismiss tests the legal sufficiency of a complaint. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). "In other words, the defendant in such a motion is saying, 'So what? The facts the plaintiff has pleaded do not state a cause of action against me.' " *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008). Under section 2-615, a court must determine "whether the allegations in the complaint, viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). However, to survive a section 2-615 motion to dismiss, a "plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action." *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009). "In ruling on a section 2-615 motion, the court only considers (1) those facts apparent from the face of the pleadings, (2) matters subject to judicial notice, and (3) judicial admissions in the record." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25.

¶ 15          A section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts a defense outside the complaint that defeats it. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). Specifically, section 2-619(a)(9) permits involuntary dismissal where the

claim is barred by "other affirmative matter." 735 ILCS 5/2-619(a)(9) (West 2020).

An " '[a]ffirmative matter' is something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Golden v. Mullen*, 295 Ill. App. 3d 865, 869 (1997). Once an affirmative matter has been established, the burden shifts to the plaintiff to demonstrate that the defense is either unfounded or requires the resolution of a material fact before it is proven. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997).

¶ 16    When ruling on motions under section 2-615 and section 2-619, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them. *Doe ex rel. Ortega-Piron v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004). Nevertheless, a court cannot rely on mere conclusions unsupported by specific facts. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). We review a dismissal under either section 2-615 or section 2-619 *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). On appeal, we are not bound by the trial court's reasoning and may affirm the dismissal on any basis supported by the record. See *Simmons v. Campion*, 2013 IL App (3d) 120562, ¶ 22.

¶ 17    To sustain a negligence action, a plaintiff must establish that (1) the defendant owed a duty, (2) the defendant breached its duty, and (3) the plaintiff suffered an injury proximately caused by that breach. *Ward v. K Mart Corp.,* 136 Ill. 2d 132, 140 (1990). The existence of a duty is a question of law to be determined by the trial court. *Id.* A duty is found to exist where a relationship exists between the parties that imposes a legal obligation on one party for the benefit of another. *Sameer v. Butt*, 343 Ill. App. 3d 78, 85 (2003). A contract is not required between a plaintiff and a defendant for the defendant to owe a tort duty. *Stinson*, 269 Ill. App. 3d at 663. Where there is a close relationship between a plaintiff and a defendant such that it is foreseeable

6

that the plaintiff will be harmed if the defendant is negligent, the defendant may owe a duty to the plaintiff to exercise reasonable care. See *id.* at 663-64.

¶ 18     In *Stinson*, the plaintiff alleged that the defendant, a drug-testing lab, was negligent for reporting a false-positive test result to the plaintiff's employer. In his complaint, the plaintiff averred that his employer required him to have a drug test completed at the defendant's facility, that the defendant tested a sample and issued a report to the plaintiff's employer that indicated that the specimen tested positive for cocaine, that the test result or the report of the test result was false, and that the plaintiff lost his job as a result of the false-positive test. *Id.* at 660-61. The plaintiff further alleged that the lab breached its duty by committing the following acts: (1) failing to instruct its employees on the danger of specimen contamination; (2) failing to use specimen containers with sealable lids; (3) failing to seal the specimen containers; and (4) erroneously testing and reporting that the plaintiff had cocaine in his body. *Id.* On appeal from a section 2-615 dismissal, the reviewing court found that the drug-testing lab had been hired by the plaintiff's employer to render services for the specific purpose of conferring a benefit on the plaintiff and it was reasonably foreseeable that the plaintiff would be harmed if the defendant negligently reported the test results to the employer. *Id.* at 664-65. Based on the close relationship between the plaintiff and the defendant, the court held that a drug-testing lab owes a duty of care to persons whose specimens it tests for employers or prospective employers and that the plaintiff's allegations were sufficient to state a cause of action for negligence. *Id.* at 665.

¶ 19     Here, Gaylord alleges that Aegis and Presence had a contract to test specimen samples of Presence patients and that based on that contractual relationship defendants owed him a duty of care imposed under *Stinson*. He then alleges that defendant breached that duty by failing to afford him the opportunity to prove a false-positive test result. However, Gaylord does not allege

7

that Presence was negligent in collecting the sample or that Aegis failed to properly test the sample. Unlike the complaint in *Stinson*, Gaylord's complaint does not contain allegations that defendants negligently tested or reported the results of his oral fluid specimen. In fact, he acknowledges that Aegis retested his sample after he inquired about the results and does not allege that the original testing procedures or the retesting procedures were inaccurate.

¶ 20     We agree that *Stinson* imposes a duty on drug-testing laboratories to exercise reasonable care in testing and distributing information to those with whom a plaintiff shares a special relationship. However, Gaylord's complaint does not contain specific factual allegations regarding his relationship with Presence or the duty of care the lab owed to him in testing the samples based on that relationship. Moreover, Gaylord fails to assert facts showing that Aegis breached the duty of care. His complaint summarily concludes that *Stinson* applies without including allegations to establish that Aegis negligently tested or reported the results to Presence. Plaintiff's sole basis for his claim of negligence is that defendants failed to afford him "a chance" to prove a false-positive. But nowhere in the amended complaint does he allege that defendants had a duty to provide him with the opportunity to prove a false-positive drug test. Accordingly, Gaylord fails to allege sufficient facts to bring a negligence claim against defendants.

¶ 21     Our evaluation of counts II and III leads to the same conclusion. Both counts fail to allege sufficient facts to support a viable cause of action or fail to assert legal claims that entitle Gaylord to recovery. Count II is directed against Presence and claims, without specific facts or supporting authority, that the controlled substance prescriptions contract was unconscionable. Unconscionability may be based upon procedural unconscionability, substantive unconscionability, or both. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99 (2006). Procedural unconscionability refers to situations where "a term is so difficult to find, read, or

8

understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Id.* at 100. Substantive unconscionability refers to terms that are "inordinately one-sided in one party's favor." *Id.* Here, the contract, which was attached to Presence's motion to dismiss pursuant to section 2-619(a)(9), states in plain terms that Gaylord's treatment "may be ended immediately" if he tested positive for an illegal drug. The record reveals that Gaylord presented no evidence or argument in his motion to vacate or at the motion to reconsider hearing showing that this language was difficult to find in the contract or that the contract was unfairly one-sided. See *Epstein*, 178 Ill. 2d at 383 (dismissal under 2-619(a)(9) is required where plaintiff fails to demonstrate that the proffered defense is unfounded). Further, he does not argue on appeal that count II was improperly dismissed on that basis. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (failure to include an argument or supporting authority results in forfeiture of the issue on appeal). Accordingly, we find no error in the trial court's dismissal of count II.

¶ 22     In count III, Gaylord claims that it was unreasonable for defendants to "conduct the bodily fluids" without due process and that in doing so defendants violated his fourth, fifth, and fourteenth amendment rights. The fourth and fifth amendments of the United States Constitution protect individuals from government actions resulting in unreasonable searches and seizures and self-incrimination. See U.S. Const., amends. IV, V. The fourteenth amendment applies to the states and says that "no state [shall] deprive any person of *** property [ ] without due process of law[.]" U.S. Const., amend. XIV. Gaylord's complaint contains no factual allegations or argument suggesting that defendants, who are not government entities, administered the drug test against his will or otherwise forced him to make a self-incriminating statement. He merely provides general allegations of facts in the first paragraph of count III followed by unsupported

legal conclusions in the second paragraph. Because Illinois is a fact pleading state, conclusory factual allegations unsupported by specific facts and bare conclusions of law are not deemed admitted for the purpose of a section 2-615 motion. See *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶¶ 22, 56 (bare conclusion that letter was published "maliciously" without specific facts to support the assertion was insufficient to support a cause of action for defamation *per se*). In this case, Gaylord's complaint is conclusory and his responses to defendants' motions to dismiss do nothing to advance his constitutional claims. Thus, the trial court properly dismissed count III.

¶ 23        Gaylord argues that even if his claims failed to state a cause of action, the trial court erred in dismissing the amended complaint without allowing a proposed or second amendment. Section 2-612(a) of the Civil Code authorizes the court to permit amendments where the pleadings fail to sufficiently define the issues before the court. 735 ILCS 5/2-612(a) (West 2020). In determining whether it is appropriate to allow the plaintiff an opportunity to amend the complaint, the court must consider whether (1) the proposed amendment would cure the defective pleading, (2) the other parties would be prejudiced or surprised by the proposed amended complaint, (3) the plaintiff had previous opportunities to amend the complaint, and (4) the proposed amendment is timely. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). We review the trial court's decision to dismiss a complaint with prejudice for an abuse of discretion. *Vogt v. Round Robin Enterprises, Inc.*, 2020 IL App (4th) 190294, ¶ 15. Here, following dismissal of the amended complaint, Gaylord failed to suggest any new facts or legal theory to  support a viable cause of action. Further, since we are reviewing the dismissal of the amended complaint, it is evident that plaintiff had a previous opportunity to amend his claims. See *Loyola Academy*, 146 Ill. 2d at 273. Thus, the trial court did not abuse its discretion

in dismissing Gaylord's amended complaint with prejudice. See *Vogt*, 2020 IL App (4th) 190294, ¶ 29.

¶ 24　　　　Next, Gaylord claims that the court erred in dismissing his complaint for failing to appear at the October 22, 2021, hearing conducted by Zoom.  We find no error on this basis as the record refutes Gaylord's claim. On several occasions during oral proceedings and in its written orders, the court expressly stated that dismissal was based on the reasons advanced in defendants' pleadings and "not solely on [Gaylord's] failure to appear." Moreover, we may affirm the court's dismissal based on any grounds supported by the record. See *Simmons*, 2013 IL App (3d) 120562, ¶ 22. Based on our previous discussion, we find the trial court properly dismissed Gaylord's amended complaint under sections 2-615 and 2-619(a)(9) of the Code.

¶ 25　　　　Last, we hold that Gaylord has forfeited any argument related to the dismissal of his numerous outstanding motions and objections because he has not provided any argument or relevant authority in support of that allegation on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 26　　　　　　　　　　　　　　　III. CONCLUSION

¶ 27　　　　The judgment of the circuit court of Will County dismissing plaintiff's complaint with prejudice is affirmed.

¶ 28　　　　Affirmed.